CHARLES E. MIEG AND LILLIAN W. MIEG, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES P. FALLIS AND LAURETTA G. FALLIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM J. LADYMAN, JR., AND FLOY LADYMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRISON M. HOWARD AND ALPHONSINE C. HOWARD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65904–65907. Filed September 29, 1959.

*Eugene T. Garrett, Esq.*, for the petitioners.
*Donald P. Chehock, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* There is no doubt that the Mummy Mountain property was purchased in order that land on the front side of the mountain might be subdivided and sold as lots. Nor is there any question that such land on the front side was held for sale to customers in the ordinary course of business. The gains realized upon sale of such lots were reported as ordinary income, and are not in controversy herein. The lands here involved are on the back side of the mountain which could not be economically subdivided for resale. When Mieg sought to buy only a portion of the front of the mountain from the Van Benschotens for subdivision purposes, he was unsuccessful. The owners insisted upon selling the entire mountain property (except 20 acres around their house), and the joint venture thus acquired land readily suitable for subdivision on the front side as well as mountain land on the back side.

The issue before us relates exclusively to 4 of the 6 parcels constituting that portion of the Mummy Mountain property located on the back of the mountain.

It is plain that a taxpayer may be both a dealer and an investor in real estate. Cf. *W. Linton Atkinson*, 31 T.C. 1241, 1247; *D. L. Phillips*, 24 T.C. 435, 445; *Walter R. Crabtree*, 20 T.C. 841, 846; *Nelson A. Farry*, 13 T.C. 8, 14; Rev. Rul. 57–565, 57–2 C. B. 546. And it is our judgment on the record before us that the petitioners had such a dual status. As we view the evidence, the property on the back of the mountain was not held for sale to customers in the ordinary course of business. The situation in relation to such land is to be sharply contrasted with the extensive subdivision activities on the front side involving the building of roads, installation of utilities and other improvements, accompanied by widespread advertising and a vigorous selling campaign. No improvements were made on the lands here involved and they were never advertised or offered for sale; each of the parcels was in fact sold to the maker of the first bona fide offer for such parcel. The evidence persuades us that the rapid increase in value of such parcels was attributable to the location of a country club nearby, and that the original intention accompanying the venture's acquisition of such mountain land was to hold it for an extended period as an investment with the hope that an ultimate enhancement in value would provide the opportunity for profitable disposition. Although there is other evidence in the record, stressed by respondent, which could lead to the conclusion that petitioners anticipated the very rapid increase in value that actually occurred, we think, on the whole, that the balance tips in favor of the petitioners in this respect. Respondent points, among other things, to the continual need for capital that was pressing upon the joint venture during its first year of operation, and contends that petitioners intended from the outset to sell the contested parcels promptly to relieve such pressure. True, such pressure existed, and the sales of the parcels in fact furnished much needed cash. However, we think that a substantial portion of the needed cash could have been obtained from other sources, and we are not persuaded that the prompt sale of the parcels was in fact contemplated at the outset as the means for providing capital for the enterprise.

The issue is primarily one of fact, and we are satisfied on weighing all the evidence that the parcels on the back of the mountain were not held primarily for sale to customers in the ordinary course of business. We have made a finding to that effect.

In the Fallis and Howard cases, the Commissioner made certain adjustments that were not contested. Accordingly,

*Decisions will be entered for the petitioners in Docket Nos. 65904 and 65906, and decisions will be entered under Rule 50 in Docket Nos. 65905 and 65907.*