WILLIAM I. NASH and MARJORIE NASH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nash v. Commissioner
Docket No. 5888-77.
United States Tax Court
T.C. Memo 1980-53; 1980 Tax Ct. Memo LEXIS 534; 39 T.C.M. (CCH) 1105; T.C.M. (RIA) 80053; February 27, 1980, Filed *534 Truman Clare, for the petitioners. J. Anthony Hoefer, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Amount
1969
$15,234.23
1970
882.68
1971
9,207.90
Due to petitioners' concessions, the issues remaining are: 1. Whether petitioners' realized in 1969 and 1971 from sales of certain real property are taxable as ordinary income or capital gains.
2. Whether petitioners are entitled to depreciation deductions on certain real property in excess of those determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and are found accordingly. William I. Nash (hereafter "petitioner") and Marjorie Nash, husband and wife, resided in Omaha, Nebraska when they filed their petition. Petitioner is a graduate aeronautical engineer whose major study was structures. From approximately 1948 to 1961 he was employed by the Corps of Engineers as a structural engineer. In 1961 he entered the real estate business as a self-employed individual. His federal income tax returns for 1966 through 1971 *535 list his occupation as "building contractor," "investor-builder" or similar designation. Petitioner is not a licensed real estate broker. While in the real estate business, petitioner's principal activity was the construction and sale of multi-family housing units. He bought old houses, razed them, constructed apartment buildings in their place, and sold them. The following schedule shows the dates when real properties, usually with single-family dwellings, were acquired by petitioners, when wrecking permits to raze the existing structures were obtained, when building permits for construction of multi-family apartment buildings were issued, when certificates of occupancy for the new buildings were issued, and when the buildings were sold by petitioners (all properties are located in Omaha, Nebraska): Date
Wrecking
Building
Property
Acquired
Permit
Permit
3903 Cass Street
1954
4903 Caldwell Street
8/20/57
11/10/61
1302 North 49th Ave.
3/28/60
1304 North 49th Ave.
10/06/60
1963
4729 California St.
12/30/60
2/23/62
2/20/62
4723-25 California St.
1/03/61
2/23/62
2/20/62
3128-30 Chicago St.
5/05/61
2/23/62
2/21/62
6628 Pratt St.
9/25/61
10/18/61
817 North 47th St.
5/10/62
1962
4801 Underwood St
8/09/63
7/20/65
7/28/65
10/06/66
10/06/66
4620 Wakeley St.
6/27/64
12/02/64
7/28/65
7/20/65
4702 Wakeley St.
6/29/64
2/26/65
6/10/66
4715 Wakeley St. *
3/22/66
9/25/67
8/04/67
4719 Wakeley St. *
3/25/66
9/25/67
8/04/67
527 Park Ave.
3/31/66
4615 Wakeley St. **
6/02/66
8/11/69)
4617 Wakeley St. **
6/02/66
8/11/69)
3/25/69
4619 Wakeley St. **
6/02/66
12/08/66)
4708 Davenport St.
6/24/68
*536 Date
Certificate of
Apartment
Property
Occupancy
Sold
3903 Cass Street
4903 Caldwell Street
6/15/62
6/26/62
1302 North 49th Ave.
4/10/62
1304 North 49th Ave.
1964
3/20/72
4729 California St.
4/12/65
4723-25 California St.
2/11/71
3128-30 Chicago St.
5/21/65
1/27/66
6628 Pratt St.
2/20/62
817 North 47th St.
1963
3/31/66
4801 Underwood St
5/04/67
5/19/72
4620 Wakeley St.
4/15/66
5/24/67
4702 Wakeley St.
4/11/66
6/30/69
4715 Wakeley St. *
4/22/68
7/23/69
4719 Wakeley St. *
4/22/68
7/23/69
527 Park Ave.
1966
4615 Wakeley St. **
4617 Wakeley St. **
4/15/70
10/31/72
4619 Wakeley St. **
4708 Davenport St.
1/06/69
On January 3, 1961, petitioner purchased a parcel of real estate described as 4723-25 California Street on which was locatted a frame house. Petitioner rented the house for a short period and on February 23, 1962, razed it. After obtaining a building permit, petitioner constructed an eight-unit apartment *537 building on the property. When construction was completed in March, 1964, the individual units were rented. Thereafter, petitioner began offering the apartment for sale, advertising it in the Omaha World-Herald Newspaper on December 20, 1964, and on January 24, February 7 and 14, and April 11, 1965. These ads stated that the property "grosses $895 monthly." Petitioner was not successful in selling the apartment and withdrew it from the market and thereafter held it as an investment. Five years later, petitioner decided again to sell this apartment. He advertised it on December 6, 13, and 20, 1970, noting that the "rents are below market." Petitioner sold the property on February 11, 1971, for $69,889. On February 14, 1966, petitioner entered into an agreement to purchase property located at 4619 Wakeley Street on the condition that he was able to acquire title to the adjacent properties at 4615 and 4617 Wakeley Street. On June 2, 1966, petitioner purchased 4615, 4617 and 4619 Wakeley Street. Each property contained an old dwelling. Petitioner paid $9,092 for 4615 Wakeley Street, of which $5,492 was allocated to the house and $3,600 to the land. Petitioner paid $10,742 for *538 4617 Wakeley Street, of which $6,700 was allocated to the house and $4,042 to the land. The home at 4615 and 4617 Wakeley Street were rented by petitioner at a loss until August 11, 1969, when he acquired permits to wreck them. Petitioners reported the following rental receipts, expenses and depreciation for 4615 Wakeley Street: Year
Receipts
Expenses
Depr.
Loss
1966
$171
$478
$320.39
($627.39)
1967
720
765
517.16
( 562.16)
1968
798
745
465.45
( 412.45)
1969
560
603
418.89
( 461.89)
Petitioners reported the following rental receipts, expenses and depreciation for 4617 Wakeley Street: Year
Receipts
Expenses
Depr.
Loss
1966
$ 475
$467
$390.81
($382.81)
1967
990
997
630.92
( 637.92)
1968
1,080
779
567.83
( 266.83)
1969
270
671
511.04
( 912.04)
In July and August, 1966, petitioner advertised 4619 Wakely Street for rent, but the property was not rented. An inspection by city officials revealed that the property was unfit for human habitation. Notice of the undesirable conditions was given to petitioner but he failed to abate them, and on December 20, 1966, the property was condemned. *539 On December 8, 1966, petitioner obtained a permit to wreck the dwelling and demolished it that month. We held in Nash v. Commissioner, 60 T.C. 503, 515 (1973), that petitioner acquired the house at 4619 Wakeley Street with the intention of demolishing it. He also acquired the houses at 4615 and 4617 Wakeley Street with the intention of demolishing them. After the old homes were removed from 4615, 4617 and 4619 Wakeley Street, petitioner constructed a twenty-unit apartment building on the three lots. The address of the new building was designated 4621-23 Wakeley Street. The certificate of occupany was issued April 15, 1970, and petitioner began renting units in the building that year. In December, 1970, petitioner began advertising 4621-23 Wakeley Street for sale. At least fifteen such advertisements appeared in the Omaha World-Herald newspaper from December 6, 1970, through June 25, 1972. The advertisements often stated the amount of the gross rentals for the building. Petitioners sold the property in 1972. Petitioners reported the following rental receipts, building depreciation and other expenses for 4621-23 Wakeley Street: Year
Receipts
Bldg. Depr.
Other Exp.
Income (Loss)
1970
$17,205
$6,736.64
$15,632.98
($5,164.62)
1971
35,198
8,801.00
21,973.00
4,424
1972
27,481
6,900.00
22,774.00
( 2,193)
*540 On June 24, 1968, petitioner purchased property at 4708 Davenport Street on which a house was located. Petitioner paid $17,555 for the property, which was rented in 1968 at a loss. Petitioner sold the property on January 6, 1969, for $17,839. For 1968, petitioners reported the following rental receipts, expenses and depreciation for 4708 Davenport Street: Receipts
Expenses
Depr.
Loss
$875
$1,215
$577.75
($917.75)
On August 9, 1963, petitioner purchased property at 4801 Underwood Street, which contained a frame house, for $13,500. He allocated $8,750 of the purchase price to the house and $4,750 to the land. Petitioner rented the house until its demolition in 1966. Thereafter petitioner constructed an 8-unit apartment building on the property. A certificate of occupancy was issued on May 4, 1967. Petitioner rented the apartments until he sold the building on May 19, 1972. Petitioner's cost for the building constructed at 4801 Underwood Street was $47,753. Petitioner used the double declining balance method of depreciating this building over its 33-1/3 years projected life. The depreciation allowable for this building over the years 1967 through *541 1970 is as follows: Year
Unused Basis
Depreciation
1967
$47,753.00
$2,148.89
1968
45,604.11
2,736.25
1969
42,867.86
2,572.07
1970
40,295.79
2,417.75
Depreciation for various properties as claimed by petitioners and as allowed by respondent is as follows: Year
Property
Reported
Allowed
Adjustment
1969
4615 Wakeley
$ 418.89
$ 0
$ 418.89
1969
4617 Wakeley
511.04
0
511.04
1969
4801 Underwood
2,941.41
2,572.07
369.34
$1,299.27
1970
4623 Wakeley
6,736.64
1,572.02
$5,164.62
1970
4801 Underwood
2,762.10
2,417.75
344.35
$5,508.97
After 1969 petitioner was primarily an investor in stocks traded on the public stock exchange. Petitioner began in 1970 to spend more time in the stock market than in the real estate business. In December, 1970, petitioner decided to sell off his remaining real properties and move to Florida. Petitioner also decided to withdraw from the real estate business because zoning laws in Omaha were becoming very restrictive and land costs were skyrocketing. Petitioner did not move to Florida in 1971 or 1972, and in 1973 he changed his mind about moving to Florida *542 and decided to remain in Omaha. In 1975 petitioner took a position with the John Hancock Company as a representative for career improvement programs for home and industry, and remained employed in that capacity for two years. Petitioner is presently employed as a financial planner for the John Hancock Company. OPINION The first issue is whether gain realized in 1971 from the sale of the apartment building at 4723-25 California Street, Omaha, Nebraska, constituted long-term capital gain or ordinary income. This in turn depends on whether petitioner held the property for investment or primarily for sale to customers in the ordinary course of his trade or business. Section 1221(1). "Primarily" means "of first importance" or "principally." Malat v. Riddell, 383 U.S. 569 (1966). Whether petitioner held the property primarily for sale to customers in the ordinary course of his trade or business is a question of fact to be determined from all of the relevant facts and circumstances. Kelley v. Commissioner, 281 F. 2d 527 (9th Cir. 1960). The burden of *543 proof is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure.
This is not the first time this petitioner has brought this issue to the Tax Court. His taxable years 1966, 1967 and 1968 were before us in Nash v. Commissioner, 60 T.C.. 503 (1973). In that case we held petitioner was in the business of building and selling apartment houses. We stated that his business consisted of "buying single family dwellings, razing the structure and constructing on the vacant land multi-family apartment buildings which he, in most instances, attempted to sell." Typically he rented new apartments before he offered the buildings for sale, and advertised the property as income-producing. Petitioner alleges, however, that he got out of the real estate business in 1968 (even though he built another apartment building in 1969 and even though he conceded that the apartment buildings sold in 1969 were held primarily for sale to customers in the ordinary course of his business) and decided to sell off his real estate holdings when he decided in December 1970 that he would move to Florida. He did not move to Florida in 1971 or 1972, and in 1973 he abandoned the idea *544 of moving to Florida and decided to stay in Omaha. Since respondent has not pleaded collateral estoppel, we need not consider its possible applicability here. See Commissioner v. Sunnen, 333 U.S. 591 (1948).
We are not persuaded that petitioner got out of the real estate business until some time in 1972 when he sold his last apartment building. Granted that he did not buy any property after 1968 (land costs skyrocketed) and did not build any apartment houses after 1969 (zoning became very restrictive); however through October 1972 he did continue to sell the buildings he had already built. Generally, he continued to hold these apartment buildings for sale to customers in the ordinary course of his business until he had sold them all. He has conceded that he held 4717-19 Wakeley Street and 4702 Wakeley Street for sale to customers when he sold them in 1969. See Mauldin v. Commissioner, 16 T.C. 698 (1951), affd. 195 F. 2d 714 (10th Cir. 1952) (taxpayer who was once actively engaged in subdivision was still engaged in that business when, after devoting himself to another business, he sold the remaining parcels with very little *545 activity). However, a taxpayer may hold some real property for sale to customers and other real property for investment. Nash v. Commissioner, supra at 519; Mieg v. Commissioner, 32 T.C. 1314 (1959). We conclude that petitioner held 4723-25 California Street for investment at the time he sold it in 1971. He purchased this parcel in 1961, demolished the frame house which was on the property when he bought it, built and rented an 8-unit apartment building, completed in March, 1964, and in December, 1964 through April, 1965 he advertised the apartment for sale. However, he was unsuccessful in selling the apartment. For five years thereafter he held the apartment building as an investment. It wasn't until December, 1970, when he decided to leave Omaha and move to Florida, that he again advertised the apartment for sale. He sold the apartment building on February 11, 1971, for $69,889. In view of the length of time he held the apartment as an investment property, we hold that when he ultimately sold the property in 1971 the property was still held *546 by him for investment and not primarily for sale to customers in the ordinary course of his business. It was, of course, held for sale immediately after he decided to attempt once again to sell it. But this is true of any property which is sold. The relevant question here is whether he had a dominant sale motive not on the eve of sale but throughout the holding period. Tibbals v. United States, 176 Ct. Cl. 196, 362 F. 2d 266, 273 (1966). [1] In view of the lengthy period of holding between 1965 and 1971 with no evidence of any sales activity in the form of advertisements or otherwise, we believe the evidence suffices to carry petitioner's burden of persuading us of the absence of the dominant sales motive during the period after April 1965. Respondent also denied capital gains treatment on the sale by petitioner in 1969 of 4708 Davenport Street. Petitioner purchased the property in 1968, rented it at a loss, held it for six months without *547 any improvements, and sold it. Unlike other properties, petitioner did not demolish the structure on the property and construct a new building. Petitioner testified that this property was held for investment and there is no evidence in the record to the contrary. We hold that this property was not held for sale to customers in the ordinary course of petitioner's business. The next issue is whether petitioner is entitled to depreciation deductions in excess of the amount allowed by respondent in 1969 and 1970 for 4615 Wakeley Street, 4617 Wakeley Street, 4801 Underwood Street and 4621-23 Wakeley Street. We have found as a fact that the homes at 4615 and 4617 Wakeley Street were purchased by petitioner with an intent to demolish them. These homes were rented at a loss until petitioner demolished them in 1969. Upon the destruction of these homes and also the home at 4619 Wakeley Street (which was unfit for human habitation), petitioner constructed a 20-unit apartment building on the sites. In Nash v. Commissioner, supra at 517, this Court held that in the case of houses petitioner acquired with the intention of demolishing them, depreciation for the period *548 prior to demolition is limited to net rental income from the property. Since petitioner's expenses other than depreciation exceeded gross rents from 4615 and 4617 Wakeley Street in 1969, respondent correctly disallowed all 1969 depreciation on these two homes. Respondent determined that the apartment building at 4621-23 Wakeley Street (built on the site of the demolished houses at 4615, 4617 and 4619 Wakeley Street) was held by petitioner primarily for sale to customers in the ordinary course of his trade or business, and therefore, in accordance with Nash v. Commissioner, supra at 519, petitioner was entitled to depreciation only to the extent of net rental income. We agree. As was petitioner's business custom, he purchased lots with old houses on them. In this case he purchased 4615, 4617 and 4619 Wakeley Street in 1966. He demolished the buildings, constructed a 20-unit apartment building on the property (which became known as 4621-23 Wakeley Street), rented the apartments in 1970, advertised the apartment building for sale beginning in December 1970, and eventually sold the apartment building as income-producing property in October 1972. He advertised *549 the apartment building at least 15 times in a local paper during the period he was attempting to sell it. The fact that petitioner was no longer actively in the real estate construction business does not prevent petitioner from still being in the real estate business with respect to this apartment building, even though he was also in another business by the time the apartment building was offedred for sale and sold. See Mauldin v. Commissioner, 16 T.C. 698 (1951), affd. 195 F. 2d 714 (10th Cir. 1952). As to the property at 4801 Underwood Street, respondent claims he used the basis for the building as determined in Nash v. Commissioner, supra, and utilized petitioner's depreciation method and useful life in determining allowable depreciation for 1969 and 1970. Since petitioner did not argue to the contrary, we conclude that respondent's allowance for depreciation is correct. Decision will be entered under Rule 155. Footnotes
*. The apartment building constructed on these two lots is referred to as 4717-19 Wakeley St. ** The apartment building constructed on these three loets is referred to as 4621-23 Eakeley St.↩
1. See also Scottwood Development Co. v. Commissioner, 26 T.C.M. 855↩, 36 P-H Memo. T.C. par. 67,175 (1967).