GRAHAM D. WILLIFORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williford v. Commissioner
Docket No. 26613-89
United States Tax Court
T.C. Memo 1994-135; 1994 Tax Ct. Memo LEXIS 127; 67 T.C.M. (CCH) 2542; March 30, 1994, Filed *127 An order and decision will be entered granting petitioner's motion for administrative and litigation costs. For petitioner: Gary A. Moreland and Arthur R. Snyder. For respondent: Martin M. Van Brauman. COLVIN
COLVIN
MEMORANDUM OPINION COLVIN, Judge: This case is before the Court on petitioner's motion for award of reasonable administrative and litigation costs pursuant to section 7430 and Rule 231. [1]
After concessions, we must decide: 1. Whether respondent's positions relating to: (a) Valuation of property contributed by petitioner to a charitable organization, and (b) petitioner's treatment of certain paintings as capital assets rather than inventory, were substantially justified. We hold that respondent's positions were not substantially justified. Powers v. Commissioner, 100 T.C. 457 (1993); Frisch v. Commissioner, 87 T.C. 838 (1986). *128 2. Whether petitioner meets the net worth requirement of 28 U.S.C. section 2412(d)(1)(B) (1988). We hold that he does. In accordance with Rule 232, the parties have submitted memoranda supporting their positions and affidavits. Since no material fact is in dispute, we conclude that a hearing is not necessary for the proper consideration and disposition of this motion. BACKGROUND 1. Petitioner and the Underlying Tax Case
Petitioner lived in Fairfield, Texas, when he filed his petition. By notice of deficiency dated August 10, 1989, respondent determined deficiencies in petitioner's Federal income tax in the amounts of $ 259,097 for 1984, $ 9,515 for 1985, and $ 348,377 for 1986. Respondent also determined additions to tax totaling $ 155,862 for 1984, $ 6,660 for 1985, and $ 106,425 for 1986. The two primary issues in the underlying case, Williford v. Commissioner, T.C. Memo. 1992-450, were: (1) The fair market value of a frieze painted by Thomas Wilmer Dewing donated by petitioner to the Brooklyn Museum of Art in 1984 (the valuation issue); and (2) whether paintings petitioner sold in 1984 and 1986 *129 were inventory held for sale to customers or investment property (the capital gains issue). Respondent determined in the notice of deficiency that petitioner was entitled to deduct $ 1,300 for his donation of the frieze and that the paintings were held as inventory. Petitioner bought the frieze in 1969. We held that the frieze had a fair market value of $ 375,000 when petitioner donated it in 1984. We held for petitioner on the capital gains issue (i.e., that petitioner did not hold the paintings for sale to customers). We considered eight factors, all of which we concluded favored petitioner. Respondent's total adjustment to petitioner's income, and the portion of the adjustment attributable to the capital gains and charitable contribution issues for 1984 and 1986, are as follows: Total adjustment
Portion of adjustment to income attributable to -- Tax
determined
capital donation of Year
by respondent gains issue frieze in 1984
1984
$ 578,060
$ 387,525
$ 190,535
1985
35,690
0
35,690
1986
743,675
667,200
76,475
2. The Audit of Petitioner's 1984-86 Federal Income Tax Returns
Petitioner filed his 1984 and 1985 income tax returns on *130 December 12, 1985, and August 19, 1986, respectively. Petitioner timely filed his 1986 return on April 15, 1987. Petitioner reported the following with respect to his Schedule C art activity and Schedule D painting sales: Item
1984
1985
1986
Schedule C
Gross income  0  $ 31,784 $ 1,040 Cash expenses  $ 52,830 36,630 31,594 Purchases  76,276 43,307 98,667 Net cash loss  (129,106)
(48,153)
(129,221)
Cost of sales  0 24,255 1,300 Schedule D capital asset
sales  649,865 1,112,000 Capital gains deductions  387,525 667,200 Richard York (York), an art expert who was appointed to the Commissioner's Art Advisory Panel before the trial of this case, appraised the frieze for petitioner. Petitioner attached York's appraisal to his 1984 return. Petitioner reported a cost basis of $ 10,000 for the frieze on his 1984 tax return. Petitioner's 1984 tax return was referred for audit to review his charitable deduction for the frieze. The examination was opened around September 30, 1987. Respondent did not contact York during the audit of petitioner's 1984-86 returns. Respondent asked petitioner to agree to extend the time to assess *131 tax for his 1984 tax year. Petitioner did so on December 14, 1987. Petitioner was not otherwise contacted or interviewed by any of respondent's agents during the audit of his 1984-86 income tax returns. Donna Shults (Shults) was petitioner's representative in the administrative proceeding. Respondent's agents did not contact petitioner or his representatives during the 20 months from September 30, 1987, to May 10, 1989, except to request copies of power of attorney forms. In a memorandum dated January 12, 1989, Revenue Agent Jim Keller (Keller) identified the issues he thought were present in the case: (1) The fair market value and cost basis of the frieze; (2) whether the frieze was inventory property; (3) whether the recipient was a tax-exempt entity; and (4) whether the Schedule D art sales should have been reported as Schedule C sales (i.e., the capital gains issue). There is no indication in the record that petitioner knew about Keller's memo. On May 10, 1989, Shults terminated petitioner's consent to extend the time to assess tax for 1984. However, at respondent's request, on June 14, 1989, Shults signed an agreement on petitioner's behalf to extend the time to assess *132 tax for 1984 until June 30, 1990. By letter to Shults dated May 10, 1989, Keller said he wanted to focus on petitioner's donation of the frieze. In that letter, Keller requested information about the frieze and the artist. By letter dated June 20, 1989, Keller told Shults that he would refer the valuation of the frieze to the Commissioner's Art Advisory Panel in Washington, D.C. By letter dated July 6, 1989, Keller asked petitioner to extend the time to assess tax for taxable years 1985 and 1986 because of the charitable contribution carryovers to 1985 and 1986. At that time, respondent had about 1 year remaining to assess tax for 1984, 2 months for 1985, and 10 months for 1986. By letter dated July 11, 1989, Keller requested a copy of petitioner's 1986 tax return, which the agent had not been able to obtain on a timely basis from the Austin Service Center. On July 12, 1989, Keller asked Shults for information for the referral to the Commissioner's Art Advisory Panel and stated that he would request that a notice of deficiency be issued disallowing the charitable contribution unless petitioner agreed to extend the time to assess tax for 1985 beyond August 19, 1989, and for *133 1986 beyond April 15, 1990. There is no indication in the record that the time remaining to assess tax for 1984 and 1986 was insufficient for respondent to obtain an appraisal from the Commissioner's Art Advisory Panel. Petitioner retained Arthur Snyder (Snyder) as counsel on July 14, 1989. Snyder represented petitioner at respondent's Appeals Division and at trial. On July 18, 1989, Shults provided most of the frieze information Keller had requested. On July 19, 1989, Shults told Keller petitioner would not agree to extend the time to assess tax for 1985 and 1986 because the case had been under audit for 22 months. The only issue respondent had raised with petitioner's representatives up until that time was the contribution of the frieze in 1984, for which petitioner had previously agreed to extend the time to assess tax. Keller told her that the notice of deficiency would include all applicable penalties and would shift the 1984 and 1986 Schedule D painting sales to Schedule C (the capital gains issue). Respondent had not asked Shults or Snyder for any information about the capital gains issue. Keller gave no reason why the notice of deficiency would be issued for 1984 and *134 1986 without investigating the case at a time when 10 and 8 months, respectively, remained to assess tax for 1984 and 1986. Keller's workpapers include his research and analysis of the issues he suspected were present in the case, including the capital gains and valuation issues. Keller's workpapers contain the following statements: Problem is that taxpayer purchased all Schedule D paintings many years ago; lends credibility to his argument that held with eye to investment and appreciation over time. In talking with employee of donee Brooklyn Museum of Art who personally knows taxpayer, he was described as an "Art Collector." In order to protect government interest in the issues I propose to reclassify all Schedule D 8412 and 8612 painting sales as Schedule C transactions. I do not have sufficient information to determine with certainty that * * * [1984] and * * * [1986] painting sales were bona fide Sch. C activities; but a pattern of classifying large dollar dispositions as "capital assets" and small dollar as "inventory" is apparent, and motive is present: doing so reduced * * * [taxpayer's] taxable income by significant amount * * * I spoke with Linda Ewing *135 of the Painting and Sculpture Department of the Brooklyn Museum. She verified that frieze was contributed in 1984: it has never been placed on public display and is currently rolled up in a museum storeroom (due to enormous size of same and "special installation requirements") but theoretically is available for study and research by scholars and the general public. Linda said that Taxpayer had contributed the work because the museum possesses many smaller works by the same artist; also, Taxpayer had been a "generous lender" for displays in the past. She concluded by noting that the museum has no definite intentions as to when the frieze will be placed on public display.
The administrative file contains a note from District Counsel attorney Gary Kallevang to District Counsel attorney Mark Barta which states: "Since so little time left on statute of limitations, could you just review as to form, etc." Before respondent issued the notice of deficiency, respondent's agents did not ask petitioner or his representatives for information about the capital gains issue, obtain an appraisal of the frieze, or interview petitioner or York. 3. Notice of Deficiency, Petition, and Answer
*136 Respondent issued a notice of deficiency to petitioner for his 1984, 1985, and 1986 tax years on August 10, 1989. In it, respondent determined that petitioner's deduction for the frieze should be limited to $ 1,300, [2] and determined that petitioner's sales of certain paintings were sales of inventory, generating ordinary income (the capital gains issue). The parties agree that respondent's position in the notice of deficiency is the position of the United States for purposes of this motion. The total adjustment to income, and the date by which respondent was required to assess tax for each year, is shown as follows: Taxable Total adjustment
Last date to
year
to income assess tax
Comment 1984
$ 578,060
June 30, 1990
Petitioner agreed to  extend time to assess  tax until that date  1985
35,690
Aug. 19, 1989
Amount in dispute  resulted solely from  carryover of donation  of frieze in 1984  1986
743,675
Apr. 15, 1990
*137 Petitioner filed the petition on November 3, 1989. Respondent filed the answer on December 7, 1989. The answer did not concede any position taken in the notice of deficiency. 4. Consideration of Case by the Appeals Division
Upon receipt of the answer, Snyder contacted District Counsel and asked that the case be transferred to the Appeals Division. Carl Schlecht (Schlecht) was the Internal Revenue Service (IRS) Appeals Officer assigned to this case. By letter dated January 19, 1990 (6 months after Snyder gave him information about the frieze), Schlecht asked the Commissioner's Art Advisory Panel to appraise the frieze. He sent the appraisal information provided by petitioner the previous July. On March 1, 1990, Snyder, Schlecht, and Jim Archie (Archie) of District Counsel's office met. Snyder told Schlecht about petitioner's art sales. Snyder wanted to discuss the merits of the case, but Schlecht would not do so until he received the report of the Commissioner's Art Advisory Panel. Schlecht asked questions about the capital gains issue that Snyder was to respond to later. Archie gave Snyder a letter requesting information about the frieze. Petitioner was in Europe *138 from March 5 to April 3, 1990. On May 5, 1990, Snyder gave Schlecht information about the frieze and petitioner's art sales. On May 15, 1990, Snyder sent more information to Archie about the frieze. The Commissioner's Art Advisory Panel considered the frieze at its April 3, 1990, meeting. The panel recommended $ 100,000 as its fair market value. Sometime before July 10, 1990, Snyder gave Schlecht and Keller copies of research by Dr. Susan Hobbs and York relating to the frieze. On July 10, 1990, Schlecht sent Snyder a copy of the Commissioner's Art Advisory Panel's report on the frieze. On July 20, 1990, Snyder and Schlecht discussed the valuation issue by telephone. Respondent made informal Branerton requests for information on the valuation issue on August 30 and September 20, 1990, and January 29, 1991. Respondent never made any discovery requests, formal or informal, on the capital gains issue. On October 1, 1990, an Appeals conference was held with Snyder, petitioner, and Schlecht. Petitioner attended the meeting and was available to be questioned, but Schlecht chose not to do so. At that time, Schlecht offered to fully concede the capital gains issue if petitioner *139 would agree to a value of $ 100,000 for the frieze. Respondent's representatives refused to discuss settling the case without linking the valuation issue to the capital gains issue. On April 19, 1991, the Commissioner appointed York, whose appraisal of the frieze petitioner had attached to his 1984 tax return, to the Commissioner's Art Advisory Panel. On April 30, 1991, respondent's expert, Dr. Charles Peavy (Peavy), issued his report, in which he valued the frieze at $ 150,000. After reviewing Peavy's report, Snyder gave Peavy private sale information which Peavy had not considered. Respondent offered to fully concede the capital gains issue if petitioner would agree to a $ 150,000 value for the frieze. Respondent's final settlement offer was to fully concede the capital gains issue in exchange for petitioner's agreeing to a value of $ 200,000 for the frieze. In the posttrial brief, respondent conceded that the value of the frieze was not less than $ 150,000. DISCUSSION 1. Motion for Litigation Costs: Introduction
A taxpayer who has substantially prevailed in a Tax Court proceeding may, if certain requirements are met, be awarded reasonable litigation costs. Sec. *140 7430(a). To be entitled to an award, the taxpayer must: (a) Timely file a motion for award of litigation and administrative costs. Rule 231(a). Petitioner meets this requirement. (b) Exhaust administrative remedies. Sec. 7430(b)(1). Respondent concedes that petitioner meets this requirement. (c) Substantially prevail with respect to the amount in controversy. Sec. 7430(c)(4)(A)(ii)(I). Respondent concedes that petitioner meets this requirement. (d) Show that the position of the United States in the action was not substantially justified. Sec. 7430(c)(4)(A)(i). (e) Not unreasonably protract the proceeding. Sec. 7430(b)(4). Respondent concedes that petitioner meets this requirement. (f) Be an individual whose net worth did not exceed $ 2 million, or an owner of an unincorporated business, or any partnership, corporation, etc., the net worth of which did not exceed $ 7 million when the petition was filed. Sec. 7430(c)(4)(A)(iii); 28 U.S.C. sec. 2412(d)(2)(B) (1988). (g) Establish that the amount of costs and attorney's fees claimed by petitioner is reasonable. Sec. 7430(a), (c)(1) and (2). Respondent concedes that the amounts claimed *141 by petitioner are reasonable and that $ 94 is a reasonable hourly rate. Section 7430 was amended by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. No. 100-647, sec. 6239(a), 102 Stat. 3342, 3743-3747, effective for petitions filed after November 10, 1988. The petition in this case was filed on November 3, 1989. 2. Whether Respondent's Position Was Substantially Justified
a. Substantial Justification
Petitioner must establish that the position of the United States in the litigation was not substantially justified. Sec. 7430(c)(4)(A)(i). The substantially justified standard is a reasonableness standard. Pierce v. Underwood, 487 U.S. 552, 563-565 (1988). Congress enacted section 7430 in 1982. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 292(a), 96 Stat. 572. Among other requirements, a taxpayer was required to show that the position of the United States was unreasonable. In 1986 Congress changed "unreasonable" to "not substantially justified", the standard applicable to the Equal Access to Justice Act (EAJA), 28 U.S.C. section 2412 (1988). Tax Reform *142 Act of 1986, Pub. L. 99-514, sec. 1551, 100 Stat. 2752; H. Conf. Rept. 99-841, at II-801 (1986), 1986-3 C.B. (Vol. 4) 801. The purpose of the change was to conform section 7430 more closely to EAJA. H. Conf. Rept. 99-841, supra at II-801, 1986-3 C.B. (Vol. 4) at 801. The fact that the Commissioner eventually loses or concedes the case is not in itself sufficient to establish that a position is unreasonable. Hanson v. Commissioner, 975 F.2d 1150, 1153 (5th Cir. 1992), revg. an unpublished Order of this Court; Broad Ave. Laundry & Tailoring v. United States, 693 F.2d 1387, 1391-1392 (Fed. Cir. 1982); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, it "clearly remains" a factor to be considered. Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-189; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Powers v. Commissioner, 100 T.C. 457, 471 (1993). *143 The taxpayer need not show bad faith to establish that the Commissioner's position was not substantially justified for purposes of a motion for litigation costs under section 7430. Estate of Perry v. Commissioner, supra; Powers v. Commissioner, supra.
EAJA's substantially justified standard requires that the Government's position be justified to a degree that would satisfy a reasonable person. Pierce v. Underwood, supra at 565. That interpretation also applies to motions for litigation costs under section 7430, Comer Family Equity Pure Trust v. Commissioner, 958 F.2d 136, 139-140 (6th Cir. 1992), affg. T.C. Memo. 1990-316; Norgaard v. Commissioner, 939 F.2d 874, 881 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390; Rickel v. Commissioner, 900 F.2d 655, 665-666 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989). "Substantially justified" means "'justified in substance or *144 in the main' -- that is, justified to a degree that could satisfy a reasonable person", Pierce v. Underwood, supra at 565. This standard is no different from the "reasonable basis both in law and fact" formulation adopted by the vast majority of the Courts of Appeals. Id.; see, e.g., Hanover Bldg. Matls., Inc. v. Guiffrida, 748 F.2d 1011, 1015 (5th Cir. 1984). For a position to be substantially justified, there must be "substantial evidence" to support it. Pierce v. Underwood, supra at 564-565. The Supreme Court said: Judicial review of agency action, the field at issue here, regularly proceeds under the rubric of "substantial evidence" set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(E). That phrase does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). * * * [Id.] If some relevant evidence is required, Pierce v. Underwood, supra, *145 then none is surely not enough. Powers v. Commissioner, supra at 473. b. We May Consider Events Occurring Before Respondent Took the Position
Respondent contends that we may not consider events occurring before respondent took the position at issue here in deciding this motion, citing Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974). We disagree. In deciding a motion for litigation costs, we may consider facts that show whether respondent's position was substantially justified, including events preceding the date the notice of deficiency was issued if the notice of deficiency is respondent's position for purposes of the motion for administrative and litigation costs. Lennox v. Commissioner, 998 F.2d 244, 247-248 (5th Cir. 1993), revg. in part and remanding T.C. Memo. 1992-382 (the Government's position on the date of the notice of deficiency must be analyzed in the context of what causes it to take that position); Powers v. Commissioner, supra at 479-480; Don Casey Co. v. Commissioner, 87 T.C. 847, 862 (1986). *146 c. Position of the United States
The "position of the United States" is the position taken by respondent: (1) In the court proceeding, and (2) in the administrative proceeding as of the earlier of (a) the date the taxpayer receives the notice of the decision of the IRS Office of Appeals, or (b) the date of the notice of deficiency. Sec. 7430(c)(7). If the Commissioner took a position in the administrative proceeding that was not substantially justified, but concedes that position in the answer, the taxpayer may be entitled to an award for costs during the administrative proceeding but not during the judicial proceeding. Huffman v. Commissioner, 978 F.2d 1139, 1143-1147 (9th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-144; see also Han v. Commissioner, T.C. Memo. 1993-386; Caparaso v. Commissioner, T.C. Memo. 1993-255. Because section 7430(c)(7) "refers to the administrative proceeding separately from the judicial proceeding, Congress intended that the United States could take two positions, which can be evaluated separately *147 to determine if each was 'substantially justified.'" Huffman v. Commissioner, supra at 1144. d. Should Respondent Have Made Inquiries About the Case During the Time Provided by Petitioner's Extension of the Time to Assess Tax for 1984 and the Time Remaining to Assess Tax for 1986? Respondent mailed the notice of deficiency on August 10, 1989. Before doing so, respondent made no inquiries to petitioner or his representatives about the capital gains issue and did not request an appraisal of the frieze or contact petitioner's appraiser, York. The Government's position may be unreasonable if it failed to adequately investigate its case. Lennox v. Commissioner, 998 F.2d 244, 248 (5th Cir. 1993), revg. T.C. Memo. 1992-382; Kenagy v. United States, 942 F.2d 459, 464 (8th Cir. 1991); United States v. Estridge, 797 F.2d 1454, 1457-1458 (8th Cir. 1986); Powers v. Commissioner, 100 T.C. 457, 476 (1993); Frisch v. Commissioner, 87 T.C. 838, 841 (1986); see also *148 Baker v. Commissioner, 787 F.2d 637 (D.C. Cir. 1986), vacating and remanding 83 T.C. 822 (1984). Respondent contends that the statute of limitations prevented respondent from inquiring about the capital gains issue or obtaining an appraisal of the frieze from the Commissioner's Art Advisory Panel. We disagree. Petitioner extended the statute of limitations for his 1984 taxable year for 18 months from December 1988 to June 30, l990. The valuation issue arose on the 1984 return, as did a $ 387,525 adjustment to income due to the capital gains issue. Respondent issued the notice of deficiency on August 10, 1989, before requesting an appraisal by the Commissioner's Art Advisory Panel or investigating the capital gains issue. At that time, petitioner had already extended the time to assess tax for 1984 and 10 months remained on the extension. The time to assess tax for 1986 would have expired on April 15, 1990. Thus, when respondent sent the notice of deficiency for 1986 (August 10, 1989), respondent still had 8 months to initiate an investigation of petitioner's 1986 year. The time to assess tax for 1985 would have expired *149 on August 19, 1989. However, 1985 plays only a bit part in this case. The adjustment for 1985 was $ 35,690, [3] *150 all of which related to a carryover of the 1984 contribution of the frieze. There was no capital gains issue for 1985. We do not view petitioner's refusal to extend the time to assess tax for 1985 as significant in light of the small role it plays in this case and the fact that petitioner had extended the time to assess tax for 1984, the year of the contribution of the frieze.[4] See Powers v. Commissioner, supra ("We are aware of no authority for the proposition that running out of time constitutes a reasonable basis in law and fact for a position"). Respondent clearly had ample time to seek to obtain a basis in fact by investigating the issues raised by petitioner's 1984, 1985, and 1986 tax returns. However, respondent, inexplicably, did not do so. See Powers v. Commissioner, supra at 482. Respondent's reliance on petitioner's failure to extend the time to assess tax for 1985 is asking us to let the tail wag the dog. In Lennox v. Commissioner, supra, the Court of Appeals for the Fifth Circuit concluded that the Commissioner suspected that the taxpayer's return was in error based in part on a review of the return. Id. However, the Commissioner did not investigate *151 the taxpayer's return before the period for assessment of tax was about to expire. Id. at 246. The taxpayer offered to extend the time to assess tax on a limited basis, but the Commissioner decided not to work out an agreement with the taxpayer and issued a notice of deficiency disallowing the suspicious deductions.[5] The Court of Appeals for the Fifth Circuit held: The * * * [taxpayers] concede, and we agree, that the IRS had a basis for suspicion regarding ownership of the apartments. But, on this record, that suspicion was not a sufficient basis for issuance of the notice, in light of the opportunity for further, and much needed, investigation. * * * [Id. at 248.]
*152 In the instant case, respondent had a basis for suspicion upon reviewing petitioner's 1984 tax return and had ample opportunity to investigate because petitioner had extended the statute of limitations for 1984 and because respondent still had 8 to 10 months to assess tax for 1984 and 1986. Appeals Officer Keller's workpapers indicate that he had been told by a reliable source that petitioner was an art collector, that he knew that petitioner had held the paintings for many years, which presented a "problem" to respondent's position, and that he did not "have sufficient information to determine with certainty" whether the 1984 and 1986 painting sales were sales of capital assets. Under these circumstances, respondent should have taken advantage of the time remaining to assess tax, including time made possible by petitioner's extension of time to assess tax for 1984. Respondent relies on Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988), affg. T.C. Memo. 1987-52. In Harrison, as we discussed in Powers v. Commissioner, supra at 481-482, the taxpayers sought an award of litigation *153 costs under section 7430. The Commissioner had examined 3 years of a partnership's returns. The IRS notified the taxpayers that as a result of their holding an interest in the partnership, their personal returns were under examination. Harrison v. Commissioner, supra at 264. Before the partnership examination was finished, the IRS asked the taxpayers to consent to extend the period to assess tax. The taxpayers signed and mailed a consent, but the IRS did not receive it. Id. The Commissioner then determined deficiencies pertaining only to partnership losses. The taxpayers filed a petition with this Court. The Commissioner then completed the partnership examination and concluded that the partnership return was correct as filed. Within 2 months the Commissioner conceded the deficiencies in full. In Harrison, the United States Court of Appeals for the Seventh Circuit said: "Because the IRS did not receive the Harrisons' consent to an extension of time, its action in finding a deficiency in order to toll the statute of limitations was reasonable." Id. at 266-267. However, Harrison is not like the instant *154 case because in Harrison the Commissioner had no time remaining to conclude the investigation, the partnership audit provided a reasonable basis for the notice of deficiency sent to the taxpayers, and the Commissioner was unaware that the taxpayers had agreed to extend the time to assess tax. Here, petitioner extended the period of limitations for 1984 for 18 months, and respondent did not use the time remaining to assess tax to investigate petitioner's returns. See Powers v. Commissioner, supra.
e. Whether Respondent's Position Relating to the Capital Gains Issue Was Substantially Justified in the Administrative and Judicial Proceeding
Upon reviewing petitioner's returns for 1984, 1985, and 1986, respondent's agents suspected that his claim that certain assets were held for investment was incorrect. Respondent's suspicions were based solely on seeing petitioner's tax returns, on which petitioner: (1) Listed his occupation as an art dealer, (2) said he had a Schedule C art business, (3) reported sales of less valuable paintings as sales of inventory, and (4) substantially lowered his taxes by reporting sales of several paintings *155 as capital gains. However, a suspicion is not a basis in fact; a position is not substantially justified unless there is "substantial evidence" to support it, Pierce v. Underwood, 487 U.S. 552, 564-565 (1988); Lennox v. Commissioner, 998 F.2d 244, 248 (5th Cir. 1993); Kenagy v. United States, 942 F.2d 459, 464 (8th Cir. 1991); United States v. Estridge, supra at 1458 (the Government's position is not substantially justified if it does not diligently investigate a case). Issuance of a notice of deficiency based solely on a review of petitioner's tax return did not provide a basis in fact for respondent's position. Powers v. Commissioner, supra at 476. Respondent argues that respondent's position was justified partly because petitioner also sold paintings that he held for sale to customers during the years at issue. We disagree. First, petitioner's total receipts from sales of paintings held for sale to customers for 1984-86 was $ 1,040. Second, it is well established that a taxpayer may hold one kind of property for *156 sale to customers and the same kind of property as an investment. Eline Realty Co. v. Commissioner, 35 T.C. 1 (1960); Mieg v. Commissioner, 32 T.C. 1314 (1959); Crabtree v. Commissioner, 20 T.C. 841 (1953). Whether petitioner is in that position depends on the facts of the case. Respondent concedes that whether property is held "primarily for sale in the ordinary course of business" is a question of fact (citing Byram v. United States, 705 F.2d 1418, 1423-1424 (5th Cir. 1983); Thompson v. Commissioner, 322 F.2d 122, 127 (5th Cir. 1963), affg. in part and revg. in part 38 T.C. 153 (1962)). The Commissioner cannot escape an award of litigation costs simply because the issue presents a question of fact. Minahan v. Commissioner, 88 T.C. 492, 500-502 (1987); Frisch v. Commissioner, 87 T.C. 838 (1986). In spite of the fact that respondent recognized that the issue was a question of fact, respondent made no factual inquiry about this issue before *157 issuing the notice of deficiency. If respondent's agents had sought information about this issue from petitioner or his representatives before sending the notice of deficiency, it is reasonable to assume they would have learned more facts relating to the factors the United States Court of Appeals for the Fifth Circuit has considered in deciding whether property is held primarily for sale to customers, such as: (1) The frequency and regularity of sales (petitioner sold four paintings in 1984 and four in 1986); (2) the substantiality of sales, and whether his profits resulted from capital appreciation and not the taxpayer's efforts (petitioner's substantial profits resulted largely from capital appreciation and not his own efforts); (3) the length of time petitioner held the paintings (petitioner held the paintings an average of more than 15 years); (4) the nature and extent of petitioner's business, and the extent to which petitioner segregated the paintings from business inventory (petitioner kept his paintings not held for sale to customers in his apartment and his dealer inventory at another location, except for one painting too large for his apartment); (5) the purpose for which *158 petitioner acquired and held the paintings before sale (petitioner acquired the paintings not held for sale to customers for his private collection, and held them as such continuously); (6) petitioner's sales and advertising efforts (petitioner did not enhance the value of the paintings, and advertised only one of them for sale); (7) the time and effort petitioner devoted to sales activity (petitioner devoted little time and effort to sales activity); and (8) how the petitioner used the sales proceeds (petitioner used some of the proceeds to buy a new apartment; there is no indication he used the proceeds to buy paintings). Byram v. United States, supra at 1424-1425; Suburban Realty Co. v. United States, 615 F.2d 171, 176 (5th Cir. 1980); Biedenharn Realty Co. v. United States, 526 F.2d 409, 415-417 (5th Cir. 1976); United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969); Ross v. Commissioner, 227 F.2d 265 (5th Cir. 1955), revg. T.C. Memo. 1954-177; Goldberg v. Commissioner, 223 F.2d 709, 712 (5th Cir. 1955), *159 revg. 22 T.C. 533 (1954). In our opinion in the underlying case, we concluded that all of these factors favored petitioner. Williford v. Commissioner, T.C. Memo. 1992-450. Respondent made no attempt to obtain information about the capital gains issue during the 22 months from when respondent first contacted petitioner to when respondent sent the deficiency notice. We conclude that respondent's position on the capital gains issue was not substantially justified during the administrative stage. Petitioner's representatives offered to discuss the capital gains issue several times before trial. Respondent's agents never sought informal or formal discovery about the capital gains issue. After issuing the notice of deficiency, Schlecht asked petitioner's representatives questions about the capital gains issue only once, and respondent has not asserted that petitioners failed to provide the requested information or that the responses supported respondent's position. The only other time respondent's agents raised this issue was when they offered repeatedly to fully concede it before trial as part of an agreement on the valuation *160 issue. One factor to consider in deciding if respondent's position is reasonable is whether the Government has used the expenses of litigation to extract unjustified concessions. H. Rept. 97-404, at 12 (1981); Frisch v. Commissioner, 87 T.C. at 841. Respondent's lack of pursuit of the capital gains issue and repeated efforts to link a full concession of it to concessions by petitioner on the valuation issue suggests that respondent raised it primarily as a tactical maneuver. We conclude that respondent's position on the capital gains issue was not substantially justified during the judicial proceeding. f. Whether Respondent's Position Relating to the Valuation of the Frieze Was Substantially Justified in the Administrative or Judicial Proceeding
Respondent's position from the administrative proceeding until after the trial was that petitioner's charitable deduction for the frieze should be limited to $ 1,300. Respondent contends that there was not enough time to obtain an appraisal from the Commissioner's Art Advisory Panel. We have previously stated our disagreement with this contention. Here, we note only that the Commissioner's *161 Art Advisory Panel considered the valuation of the frieze on April 3, 1990, which was well before June 30, 1990, the date to which petitioner had agreed to extend the time to assess tax for 1984. Thus, petitioner cannot be blamed for the fact that respondent issued the notice of deficiency for 1984 before receiving the panel's report. Petitioner paid $ 1,800 for the frieze in 1969. A sale of the property must have occurred within a reasonable time to be relevant in determining value. Rubber Research Inc. v. Commissioner, 422 F.2d 1402 (8th Cir. 1970), affg. T.C. Memo. 1969-24; Cooley v. Commissioner, 33 T.C. 223, 225 (1959), affd. 283 F.2d 945 (2d Cir. 1960). Respondent does not suggest that a 1969 price for the frieze is relevant in deciding its value in 1984. However, respondent points out that petitioner's 1984 tax return did not state that he bought the frieze in 1969, and thus respondent argues petitioner "did not establish" that the frieze was not held for less than 6 months and thus short-term capital gain property (limiting his deduction to his cost basis). *162 We disagree. Respondent may not rely on the burden of proof to establish the requisite basis in fact for respondent's position. Powers v. Commissioner, 100 T.C. 457, 472-476 (1993). To have a basis in fact, respondent must have "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564-565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). While petitioner's tax return led respondent to question whether petitioner could treat the sale as long-term capital gain, respondent failed to conduct the required investigation into the matter. Lennox v. Commissioner, 998 F.2d 244, 248 (5th Cir. 1993), revg. in part and remanding T.C. Memo. 1992-382. Respondent was slow in seeking an appraisal from the Commissioner's Art Advisory Panel. Respondent requested the panel's appraisal in January 1990, more than 4 years after petitioner filed his 1984 return. Respondent did not receive the panel's appraisal of the frieze until 8 months after issuing *163 the notice of deficiency. The fact that it took Snyder 2 months (from May to July 1989) to provide some information about the frieze added relatively little to this chronology. When respondent received the panel's $ 100,000 appraisal, respondent did not abandon the $ 1,300 position taken in the notice of deficiency, nor did respondent modify that position when, 42 days before trial, respondent's expert appraised the frieze at $ 150,000. Even if we treated the expert report as respondent's position, it came after petitioner had incurred significant litigation costs during the judicial proceeding. Respondent never contacted petitioner's expert, York, whose $ 500,000 appraisal was properly included with petitioner's 1984 tax return, filed 44 months before the notice of deficiency was sent. Cf. Frisch v. Commissioner, 87 T.C. 838 (1986) (Commissioner's valuation position unreasonable where Commissioner had taxpayer's appraisal for 7 months but did not investigate further). Had respondent looked into the matter, respondent most likely would have found York had the qualifications and reputation that led the Commissioner to appoint York to the Commissioner's *164 Art Advisory Panel on April 19, 1991. Respondent relies on Hursh v. Commissioner, T.C. Memo. 1990-184, in which respondent's position in a notice of deficiency was based on an expert witness report. Respondent's reliance on that case is not persuasive because, here, respondent did not obtain an expert report until 22 months after issuing the notice of deficiency, and only 42 days before trial. In addition, the testimony of a witness does not establish the position of the United States for purposes of section 7430. See Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144; Sher v. Commissioner, 861 F.2d 131, 134-135 (5th Cir. 1988), affg. 89 T.C. 79 (1987). Respondent's counsel did not assert a position different from the position taken in the notice of deficiency until filing the post-trial opening brief. Thus, the position of the United States in the administrative proceedings did not change before trial. We conclude that respondent's position relating to the value of the *165 frieze did not have a reasonable basis in fact and was not substantially justified in either the administrative or judicial stage of this case. 3. Net Worth Requirement
To be entitled to an award of litigation costs, petitioner must show that his net worth did not exceed $ 2 million when the civil action was filed on November 3, 1989, or if he was the owner of an unincorporated business, that its net worth did not exceed $ 7 million and it had no more than 500 employees. Sec. 7430(c)(4)(A)(iii); 28 U.S.C. sec. 2412(d)(1)(B) (1988). Respondent does not dispute petitioner's method of calculating his net worth or his statement of his net worth in his affidavit. The parties stipulated that petitioner's net worth was less than $ 2 million on November 3, 1989, if net worth is determined by reference to historical or acquisition cost. Respondent concedes that petitioner may calculate his net worth by subtracting total liabilities from total assets, based on historical acquisition cost. In light of the stipulation and respondent's concessions, and because respondent's legal memorandum filed after submission of the final stipulation and affidavits *166 does not challenge that petitioner meets the net worth requirement, we deem this issue to be conceded. Based on the foregoing, we conclude that petitioner's motion should be granted. To reflect the foregoing, An order and decision will be entered granting petitioner's motion for administrative and litigation costs. Footnotes
1. Section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner reported a charitable contribution of $ 191,285 for 1984, and charitable contribution carryovers of $ 36,240 for 1985, and $ 76,475 for 1986. Respondent disallowed $ 190,535 for 1984, $ 35,690 for 1985, and $ 76,475 for 1986. Respondent allowed $ 750 for 1984 and $ 550 for 1985, for a total of $ 1,300.↩
3. The amount in dispute for 1985, $ 35,690, was about 3 percent of the total amount in dispute for the 3 years.↩
4. The United States Court of Appeals for the Fifth Circuit has expressly reserved ruling on the question whether a taxpayer's refusal to extend the period to assess tax bears on whether the position of the United States in a notice of deficiency is substantially justified. Lennox v. Commissioner, 998 F.2d 244, 249 n.6, (5th Cir. 1993) revg. in part and remanding T.C. Memo. 1992-382↩. However, we need not decide that issue here: (1) As to the capital gains issue, because respondent had ample time remaining to investigate petitioner's taxable years 1984 and 1986, in which that issue occurred; and (2) as to the value of the frieze, because petitioner had previously agreed to extend the time to assess tax for 1984, the year in which he made the contribution.
5. Similarly, here, in July 1989 respondent's agent told petitioner's representative he would delay issuing the notice of deficiency only if petitioner agreed to extend the time to assess tax for 1985 and 1986, even though, at that time, respondent had 9 months remaining to assess tax for 1986. We do not, therefore, decide whether respondent would have been substantially justified if the notice of deficiency issued on Aug. 10, 1989, had been limited to petitioner's tax year 1985.↩