United States Court of Appeals,

Fifth Circuit.

No. 91–5060.

Bruce HANSON and Irene C. Hanson, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Oct. 26, 1992.

Appeal from the Decision of the United States Tax Court.

Before JONES and BARKSDALE, Circuit Judges and JUSTICE,[1] District Judge.

EDITH H. JONES, Circuit Judge:

Bruce and Irene Hanson appeal an order of the Tax Court denying them litigation costs for their suit against the Internal Revenue Service. 26 U.S.C. § 7430. Because the Tax Court abused its discretion in denying those costs, we reverse.

I.

The Hansons provoked trouble with the IRS some fourteen years ago, when Bruce Hanson submitted a tax return for the year 1977 on which he objected to the form's questions. Hanson then sued the Commissioner in federal district court, seeking to invalidate the nation's tax system as unconstitutional. The district court dismissed the suit and this Court affirmed the dismissal in December 1979. Subsequently, Hanson was convicted of willfully failing to file a return for 1977. In March 1980, the Hansons at last filed a genuine joint return for 1977. The return disclosed wages of $37,768.71, other income, employee business and itemized deductions, and $9.50 in federal income tax withheld. The Hansons paid the balance due to the IRS.

Next began the proceedings that led directly to the present controversy over whether the Hansons should get their litigation costs. On October 13, 1988, the Commissioner issued a notice

[1]District Judge of the Eastern District of Texas, sitting by designation.

of deficiency that claimed the Hansons still owed $9,245.90 in income tax for the year 1977. The notice also alleged that the Hansons owed additions to tax totalling $2,639.73 under 26 U.S.C. §§ 6653(b) and 6654 for fraud.

On December 27, 1988, the Hansons, proceeding without an attorney, filed a petition for redetermination of the deficiency and additions to tax in the United States Tax Court. In their petition, the Hansons argued that the deficiency assessment was barred by the statute of limitations for collection of a tax because the IRS issued it more than three years after they filed their joint return in 1980. Two months later, the Commissioner responded in his answer that the statute of limitations had not run because of the asserted fraud penalty. The Hansons filed separate replies to the Commissioner's answer on April 10, 1989. Each reply was two pages long, largely unremarkable, but noted that the IRS had not alleged fraud with respect to the 1977 return filed in 1980.

The Hansons next filed brief motions for summary judgment accompanied by legal memoranda and numerous exhibits, primarily relating to the Hansons' earlier attempt to invalidate the tax system. The Commissioner objected to summary judgment and moved to recover damages totalling $10,000 under 26 U.S.C. § 6673, claiming that the Hansons' position was "frivolous." Meanwhile, the Commissioner sought to file an amended answer. The Tax Court scheduled a hearing on the various motions to take place in Washington, D.C. on August 16, 1989. The Hansons asked that the hearing take place in Dallas, Texas, where they live. The Tax Court accordingly rescheduled the hearing for December 7, 1989, in Dallas.

On September 5, 1989, the Hansons filed a request that the Commissioner respond to 66 separate admissions. On October 2 the Commissioner filed a motion for protective order. The Tax Court granted the motion ten days later "to preclude petitioners from requesting information that was irrelevant or available to the public." Order and Decision of Tax Court at 4.

Three days before the scheduled December 7 hearing, the IRS conceded the case to the Hansons. The parties entered a settlement that stipulated that: 1) the Commissioner's notice of deficiency was untimely, 2) the Hansons did not owe more income tax for 1977, 3) the Hansons did not owe additional tax under §§ 6653(b) or 6654, and 4) the Hansons did not owe any damages for their conduct of the litigation.

On December 12, 1989, the Hansons moved to recover litigation expenses of $1,694.53, including a filing fee, electronic legal research costs, postage, and copying and travel expenses. The Commissioner objected to an award of fees. From the Tax Court's denial of the petitioners' request, they have timely appealed.

## II.

The petitioners seek to have their litigation costs reimbursed by the IRS under 26 U.S.C. § 7430, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, 102 Stat. 3342, § 6239(a) ("TAMRA"). Section 7430 provides that a "prevailing party" may recover reasonable litigation costs. To qualify as a prevailing party, the tax litigant must establish that the position of the United States in the underlying litigation was not "substantially justified." § 7430(c)(4)(A)(i). The litigant must have "substantially prevailed" on either "the amount in controversy" or "the most significant issue or set of issues presented." § 7430(c)(4)(A)(ii)(I) and (II). Finally, the litigant must also have exhausted the administrative remedies available within the Internal Revenue Service. § 7430(b)(1).

The IRS concedes that the Hansons substantially prevailed in the underlying litigation and exhausted all administrative remedies available within the IRS. The sole issue on appeal is whether the position of the United States was "substantially justified."[2] We review the Tax Court's

[2]The parties spill some ink in their briefs on the question of when the "position of the United States" is set for purposes of § 7430. The petitioners argue that the position of the United States is established when the Commissioner issues the notice of deficiency, here, October 13, 1988.

determination on the issue of substantial justification for abuse of discretion. *Heasley v. Commissioner,* 967 F.2d 116, 120 (5th Cir.1992), citing *Pierce v. Underwood,* 487 U.S. 552, 557–63, 108 S.Ct. 2541, 2546–49, 101 L.Ed.2d 490 (1988) (requiring abuse of discretion review for analogous provision of the Equal Access to Justice Act).

We first examine the meaning of "substantial justification." Congress amended § 7430 in 1988 in part to bring its language more in line with that of the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). Sen.Rep. No. 100–445, in 1988 U.S.Code Cong. & Admin.News 4515, 4893. Like § 7430, the EAJA allows courts to award litigation costs to a prevailing party unless "the position of the United States was substantially justified." Compare 28 U.S.C. § 2412(d)(1)(A) with § 7430(c)(4)(A)(i). This court has previously drawn on a longer experience with the EAJA to construe analogous provisions of § 7430. *Heasley,* 967 F.2d at 120 (substantial justification); *Powell v. Commissioner,* 891 F.2d 1167, 1170 (5th Cir.1990) (awarding fees for fee litigation). We do so again.

Substantially justified means " "justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550 (interpreting substantial justification under the EAJA); *see also Heasley,* 967 F.2d at 120. It demands that the government's position have a "reasonable basis both in law and fact." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. It means more than that the government's position was "merely

---

The respondent counters that the government may have two positions, one during administrative proceedings and one during litigation. Thus, in the respondent's view, the government's position may be substantially justified during litigation even if not substantially justified at the administrative level. In *Sher v. Commissioner,* 861 F.2d 131 (5th Cir.1988) (decided under 1986 version), a panel of this Court held that in § 7430 disputes courts could only review the position taken by the IRS after the District Counsel became involved in the case (usually the agency's in-court litigating position). However, TAMRA eliminated the language upon which *Sher* relied. Compare discussion in *Sher,* 861 F.2d at 134, with current § 7430(c)(7). The controversy is moot in this case because the petitioners did not incur any administrative expenses. Thus, we reserve for another day the dispute over the post-TAMRA definition of "position of the United States." That does not prevent us from reviewing the government's position in litigation against the backdrop of the administrative actions that have gone before. That backdrop is relevant to a determination whether the government's position *in litigation* is substantially justified.

undeserving of sanctions for frivolousness." *Id.* For example, it is not as lenient as the standard presently governing fee awards in Title VII cases. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 420–21, 98 S.Ct. 694, 699–700, 54 L.Ed.2d 648 (1978) (plaintiff avoids award by showing that the case was nonfrivolous, that is, having some merit or foundation). And although the fact that the government lost in the underlying litigation does not compel an award of costs, the outcome of the lawsuit remains a factor to be considered. *Estate of Perry v. Commissioner,* 931 F.2d 1044, 1046 (5th Cir.1991); *see also S & H Riggers and Erectors, Inc. v. Occupational Safety & Health Review Commission,* 672 F.2d 426, 430 (5th Cir.1982) (reviewing legislative history of substantial justification under EAJA). Together with relevant caselaw, these standards may be applied to the facts of this case.

The Internal Revenue Code provides that "the amount of [any] tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not the return was filed on or after the date prescribed)." I.R.C. § 6501(a). However, "[i]n the case of a false or fraudulent return with the intent to evade the tax, the tax may be assessed ... at any time." I.R.C. § 6501(c)(1). Thus, the three-year statutory limit does not apply to fraudulent returns.

The Hansons filed their joint return for 1977 in March 1980. The IRS had three years from that time to challenge the return. The Commissioner issued his notice of deficiency in October 1988, almost six years after the statute of limitations had run. When the Hansons pointed out in their petition that the statute of limitations barred the assessment, the government responded that the statute of limitations did not apply because the Hansons were guilty of fraud. However, at no time did the government allege that the return filed in 1980 was fraudulent, a fact that the Hansons noted in their reply to the government's answer. Bruce Hanson did file a protester document, which, combined with the filing of false W–4 forms (withholding $9.50 on taxable income of over $37,000), may have reflected a willful attempt to evade income tax. These documents were not a return, however, subsequently, the Hansons filed a joint return *not* infected by fraud. In these circumstances,

the statute of limitations was applicable, and barred the assessment. *Badaracco v. Commissioner,* 464 U.S. 386, 404, 104 S.Ct. 756, 767, 78 L.Ed.2d 549 (1984); *see also* Rev.Rul. 79–178, 1979–1 C.B. 435.

During the litigation, the Hansons repeatedly called the government's attention to its error. The government's underlying legal and factual position in the litigation—that fraud prevented application of the statute of limitations—was utterly insupportable. Indeed, it had *no* basis in law and fact—reasonable or otherwise—to avoid the statute of limitations. As such, the government's position was not substantially justified. *See Beaty v. United States,* 937 F.2d 288, 292–93 (6th Cir.1991) (the position of IRS was not substantially justified where it did not have "even a chance of succeeding"). The government's brief concedes this error.

The government argues, however, that its position was substantially justified because it was beset by a flurry of litigation activity from the Hansons that prevented it from adequately investigating the case and uncovering its error earlier. The Tax Court agreed, concluding that "the time expended by respondent's attorneys and other employees to consider and object to the various motions (including protester arguments) filed by petitioners since the petition was filed on December 27, 1988, prevented respondent from giving the attention necessary to the substantive issues raised in the petition until less than two months before the December 7, 1989, hearing."

On the facts of this case, that conclusion was an abuse of discretion. We have not shied from reversing a denial of costs under § 7430 where the denial was an abuse of discretion. *Heasley,* 967 F.2d at 120–21 (position of IRS on negligence penalty was unreasonable; reversing Tax Court). First, the Hansons did not burden the government with their motions. They moved for summary judgment, moved to have the hearing take place nearer their home, and sought discovery. That is the extent of their motion activity. As the Hansons were entitled to summary judgment, they should not be penalized for being right on that motion. The government did not respond to their motion to move

the hearing to Dallas, which the Tax Court granted. Only their discovery request was even plausibly unreasonable. If so, the government's remedy is to have asked the court to subtract that portion of the Hansons' litigation costs attributable to the discovery request, § 7430(b)(4), not to avoid reimbursement altogether. The discovery dispute, from the date of petitioner's request until the Tax Court issued its protective order, consumed just over a month of the litigation. It strains the imagination to believe that the government could not find the time to do adequate research into the underlying facts and law applicable to this dispute.[3] Where the litigation activity of the taxpayer is largely justified, the government cannot successfully contend that that activity prevented it from adequately investigating the litigant's claim so as to avoid a fee award under § 7430.

Second, the government not only opposed the petitioners' motion for summary judgment, but sought sanctions totalling $10,000 against the Hansons' for seeking it. The government called the Hansons' position "frivolous" and accused the Hansons of attempting to delay the proceedings. On the contrary, the Hansons were plainly correct on the merits. The government cannot seek damages against a tax litigant for taking an allegedly frivolous position on the dispute underlying the litigation and subsequently claim that it did not have adequate time to investigate the litigant's claim so as to avoid a fees award under § 7430. If the government has time to determine that the taxpayer's position is "frivolous," it has time aplenty to investigate the strength of the taxpayer's underlying claim.

Third, as the government observed in its objection to Bruce Hanson's motion for summary judgment, "the issues in this case are not complex or of first impression." The IRS needed only to read the statute of limitations and its own revenue ruling to discover its error. The Hansons, far from

---

[3]Nothing in the record indicates that the Hansons pressed frivolous "tax protester" arguments during the litigation. Indeed, throughout, the heart of the petitioners' argument was that the statute of limitations barred assessment of the tax for 1977. True, the Hansons did attach exhibits to their pleadings and motions that related to Bruce Hanson's attempt in the late 1970s to invalidate the tax system. Some of those documents included protester arguments. But that does not sustain a contention by the government that it was overwhelmed by a taxpayer's litigation activity. The government in this case did not, and need not, "respond" extensively to frivolous protester arguments.

burdening the government with motions, correctly pointed out the government's glaring error from the beginning of the litigation. The issue in this case was clear as light shining on water. The legal simplicity of the case contradicts the government's argument that it had no time properly to evaluate the Hansons' case. *See Ashburn v. United States,* 740 F.2d 843, 850 (11th Cir.1984) (EAJA case, suggesting that if issues involved in case are "routine or clearcut" government's concession of case does not bar fees award).

Finally, the government's own inattention and mismanagement, rather than the Hansons' litigation activity, led to the government's substantially unjustified position. The IRS revealed in its Objection to Litigation Costs that the return filed in 1980 "was not activated" into its system. This omission, according to the government's counsel, contributed to the government's erroneous position in litigation. Counsel for the government also acknowledged in her Objection to Litigation Costs that she did not receive the administrative files on the Hanson case until three months *after* she filed the government's answer. The government offers no explanation for that delay. The Hansons cannot be penalized for the government's own internal breakdown in communications and organization. *See Kenagy v. United States,* 942 F.2d 459, 464 (8th Cir.1991) (government's position may not be reasonable if government failed adequately to investigate the case).

This is not to say that a taxpayer's litigation activity in the form of unreasonable motions, pleadings, and memoranda cannot cumulatively be so burdensome as to prevent the government from adjusting its substantively unreasonable position in litigation. Tax protester cases often suffer from procedural abuses. But under the facts of this case, the government could not contend that the Hansons' litigation activity prevented it from devoting sufficient time to the uncomplicated substantive issues presented. The Tax Court abused its discretion in concluding otherwise.

The government further urges that if the Commissioner promptly concedes a case, he defeats a motion for litigation costs under § 7430. Presumably, the government would have this Court hold

that the Commissioner's otherwise unreasonable position in litigation is automatically rescued from a § 7430 award if he surrenders "promptly."   In support of that view the government cites one decision of this Court, *Sher v. Commissioner,* 861 F.2d 131 (5th Cir.1986), and several from other circuits, *Harrison v. Commissioner,* 854 F.2d 263 (7th Cir.1988);  *Wickert v. Commissioner,* 842 F.2d 1005 (8th Cir.1988);  and *Bertolino v. Commissioner,* 930 F.2d 759, 761 (9th Cir.1991). Neither the argument nor the citations sustain the government's novel position.

Just as the government's concession of a case does not in itself indicate that the government's position was unreasonable, *see Estate of Perry,* 931 F.2d at 1046, neither does the government's concession in itself indicate that the government's position was reasonable.  Rather, the government's concession of a case is one factor to be considered when the trial court decides whether the government's overall position was substantially justified.  The determination of the significance of the government's concession at a given point, in light of all the facts in a given case, will be left in the first instance to the sound discretion of the trial court.  *Heasley,* 967 F.2d at 120.

The government's theory could allow it to pursue a subst antively unreasonable theory in litigation, settle the case on the eve of summary judgment, and escape an award of litigation costs to the prevailing tax litigant.  That is precisely what happened in this case.  Section 7430, designed to protect taxpayers from overreaching by the IRS, will not abide that result.  We said as much in *Powell v. Commissioner,* 791 F.2d 385, 391 (5th Cir.1986):  "If the IRS takes an arbitrary position and forces a taxpayer to file suit, then, after the papers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the cost of suing."  This reading of § 7430 allows tax litigants to recover the costs of a civil proceeding they never should have been required to initiate. *Id.*  In an EAJA case, another circuit court observed that "if the government does not immediately accede to the plaintiff's demand, but instead initially opposes his claims and then at some later stage (*e.g.,* in a pretrial settlement) surrenders, the United States will be liable for attorneys' fees....  Under such circumstances, not only will the government have acted unreasonably, but it will have adopted

(at least briefly) a litigation position lacking substantial justification." *Spencer v. NLRB,* 712 F.2d 539, 555 n. 58 (D.C.Cir.1983).[4]

The cases the government cites do not sustain its argument. In *Sher,* we affirmed a decision of the Tax Court denying fees under § 7430. There, the IRS conceded the case almost as soon as the petition was filed. An appeals officer promptly reviewed the tax litigant's files, met with the taxpayer's attorney, discovered the error of the IRS, and settled the case. Nothing in the taxpayer's petition alerted the District Counsel to the agency's error. Thus, the Tax Court did not err in deciding that the position of the IRS was substantially justified. 861 F.2d 131, 135. *Sher* did not indicate that the government shielded itself from liability for litigation costs simply by conceding the case. Indeed, we cautioned that "under different facts, the answer filed by the IRS would be inadequate without further investigation." *Id.* The actions of counsel for the IRS "would not have been sufficient if the petition and the documents in the file demonstrated the need for further investigation." *Id.* As we observed above, the Hansons' petition and other documents called for further investigation.

The decisions cited from other circuits, all of which involve settlement of the underlying dispute, are similarly unavailing to the government. In *Harrison,* 854 F.2d 263, the Seventh Circuit affirmed a Tax Court finding that the government's position was substantially justified. The IRS conceded the case as soon as it received internal information that that was the proper course. *Id.* at 265. The taxpayers, however, had failed to come forward with evidence of the IRS's error. *Id.* at 266. In *Wickert,* 842 F.2d 1005, the Eighth Circuit affirmed a denial of costs where the IRS acknowledged its error just ten days after filing its answer. *Id.* at 1006. In *Bertolino,* 930 F.2d 759, the Ninth Circuit affirmed a denial of costs where the taxpayer's own error had "created much of the problem." *Id.* at 761. These cases are significantly distinguishable from the present one.

---

[4]We leave open, as did the District of Columbia Circuit, 712 F.2d at 556 n. 58, the question whether the government should be obliged to pay fees when it surrenders at the very outset of litigation. At that point a plaintiff's costs will be very small, perhaps de minimis. Here, the IRS did not settle with the Hansons until three days before the hearing on the petitioners' motion for summary judgment.

Our declining to reward the government's concession of a tax case with an automatic victory in a subsequent § 7430 dispute will not discourage the government from conceding a case and abandoning a substantially unjustified position in litigation. On the contrary, this rule will encourage the government quickly to settle tax cases where its position is not substantially justified. First, as before, the longer the government maintains an unreasonable position the higher its costs, and those it will have to pay the prevailing party under § 7430. Second, the government's prompt concession of a case will still be considered as a factor contributing to the reasonableness of its position. The concession will not be dispositive, but still relevant. The closer the government's concession is to the onset of litigation, the more likely it will render the government's overall position in litigation "substantially justified."

The government did not concede the Hansons' case soon enough, however, to rescue its indefensible litigation position. The IRS sat on the Hansons' 1980 joint return more than eight years before it issued its notice of deficiency. The notice exceeded the statute of limitations by almost six years. The government settled the case almost a full year after the Hansons filed their petition in the Tax Court. During that time, the government, calling the Hansons' position frivolous, moved for substantial damages against them and repeatedly ignored their correct legal argument that the statute of limitations barred the assessment. With an impending summary judgment hearing just three days away, the government conceded the case in its entirety. The Hansons had already incurred costs to defend against the government's unjustified position.

The government and the Tax Court repeat almost as a mantra the opinion that the Hansons are tax protesters. Even if that is true, their status as tax protesters does not deprive them of the statutory protection under § 7430 that they be treated reasonably by the IRS.

The position of the United States in this litigation was not substantially justified. The Tax Court abused its discretion in denying the Hansons' litigation expenses. Although IRS has contended

perfunctorily that the costs incurred by the Hansons are unreasonable, it would have been simple enough here to specify the particular charges to which IRS objects. Because it would be an enormous waste of judicial resources to remand, as IRS now suggests, for a determination of reasonableness, we conclude that IRS has forfeited its challenge. Consequently, the decision of the Tax Court is REVERSED and RENDERED in favor of appellants for $1,694.53.