T.C. Memo. 1997-44


UNITED STATES TAX COURT


BEAVER BOLT, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22087-93.                    Filed January 27, 1997.


Merritt S. Yoelin, for petitioners.

Cheryl B. Harris, for respondent.


MEMORANDUM OPINION


COLVIN, Judge:   This matter is before the Court on petitioner's motion for litigation costs under section 7430[1] and Rule 231.  Respondent concedes that petitioner substantially

---

[1] Section references are to the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

prevailed, exhausted its administrative remedies, and meets the net worth requirements. Sec. 7430(b)(1), (c)(4)(A)(ii)(I), (iii). The remaining issues for decision are:

1. Whether respondent's position in the underlying proceeding was substantially justified. We hold that it was not; and

2. whether petitioner's counsel is entitled to be reimbursed at the rate of $75 per hour plus a cost of living adjustment, as respondent contends; or at a rate of $125, $150, and $180 per hour, as petitioner contends. We hold that the appropriate hourly rate is $103.95 for 1994 and $107.10 for 1995.

The parties submitted memoranda and affidavits supporting their positions. We decide the motion based on the memoranda and affidavits provided by the parties. Neither party requested a hearing. There are no significant factual disputes. We conclude that a hearing is not necessary to decide this motion. Rule 232(a)(3).

## Background

1. Petitioner

Petitioner is a corporation, the principal place of business of which was in Portland, Oregon, during the years in issue and when it filed its petition.

2. Underlying Tax Case

The primary issue in the underlying case, Beaver Bolt, Inc. v. Commissioner, T.C. Memo. 1995-549, filed November 20, 1995,

was whether payments petitioner made to Jane Grecco (Grecco) were for a covenant not to compete, as petitioner contended, or were for her stock in petitioner. Petitioner had a stock purchase agreement with its officers, including Grecco, which gave petitioner the option to repurchase its stock owned by a terminated employee. The agreement included a formula setting the purchase price for the stock. Grecco negotiated a financial settlement with petitioner under which petitioner paid Grecco $513,400 when she ceased working for petitioner. Petitioner treated $130,000 of this amount as payment for Grecco's stock in petitioner and $383,400 as payment for the covenant not to compete. Petitioner amortized $383,400 for the covenant not to compete over 3 years.

Respondent prepared an Engineering and Valuation report, dated July 31, 1992, which concluded that Grecco's stock in petitioner was worth $739,000 on June 30, 1988, and the covenant not to compete was worth $0. Respondent disallowed petitioner's amortization deductions in full in the notice of deficiency sent on July 15, 1993.

On April 18, 1994, petitioner's expert concluded that Grecco's stock was worth $190,000. Petitioner's expert prepared a stock valuation report, a copy of which respondent received on June 24, 1994. On August 22, 1994, respondent's expert concluded that Grecco's stock was worth $188,600 and that the covenant not to compete was worth $52,669. On September 27, 1994, the parties

agreed that the fair market value of Grecco's stock in petitioner was $189,300. At trial, respondent contended that the value of the covenant was $52,669.

Respondent did not contend that petitioner paid the $513,400 to Grecco for anything other than the covenant not to compete and Grecco's stock in petitioner. Petitioner argued, and we held, that the covenant not to compete was worth $324,100, the difference between the total amount petitioner paid Grecco ($513,400) and the agreed value of Grecco's stock redeemed by petitioner ($189,300).

## Discussion

### A. Motion for Litigation Costs: Introduction

Generally, a taxpayer who has substantially prevailed in a Tax Court proceeding may be awarded reasonable litigation costs. Sec. 7430(a)(2). To be entitled to an award, the taxpayer must:

(a) Exhaust administrative remedies. Sec. 7430(b)(1). Respondent concedes that petitioner meets this requirement.

(b) Substantially prevail with respect to the amount in controversy. Sec. 7430(c)(4)(A)(ii)(I). Respondent concedes that petitioner meets this requirement.

(c) Show that the position of the United States in the action was not substantially justified. Sec. 7430(c)(4)(A)(i). Respondent contends that petitioner does not meet this requirement.

(d)  Be an individual whose net worth did not exceed $2 million, or an owner of an unincorporated business, or any partnership, corporation, etc., the net worth of which did not exceed $7 million, when the petition was filed.  Sec. 7430(c)(4)(A)(iii); 28 U.S.C. sec. 2412(d)(2)(B).  Respondent concedes that petitioner meets this requirement.

(e)  Establish that the amount of costs and attorney's fees claimed is reasonable.  Sec. 7430(a), (c)(1).  Recoverable attorney's fees are limited to $75 per hour adjusted for cost of living increases and special factors.  Sec. 7430(c)(1)(B)(iii).  Respondent contends that petitioner does not meet this requirement.

A taxpayer has the burden of proving that it meets each requirement before the Court may order an award of litigation costs under section 7430.  Rule 232(e); Estate of Johnson v. Commissioner, 985 F.2d 1315, 1318 (5th Cir. 1993); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990); Minahan v. Commissioner, 88 T.C. 492, 497 (1987).[2]

---

[2] In 1996, legislation was enacted which shifted to the Commissioner the burden of proving whether the position of the United States was substantially justified, sec. 7430(c)(4)(B), as amended by the Taxpayer Bill of Rights 2 (TBR2), Pub. L. 104-168, sec. 701, 110 Stat. 1452, 1463 (1996), and raised the hourly rate for attorney's fees to $110, sec. 7430(c)(1)(B)(iii), as amended by TBR2 sec. 702(a), 110 Stat. 1464.  These changes do not apply here because they are effective for proceedings commenced after July 30, 1996.  TBR2 secs. 701(d), 702(b), 110 Stat. 1464; see National Industrial Investors, Inc. v. Commissioner, T.C. Memo. 1996-423.

B.  Whether Respondent's Position Was Substantially Justified

    1.  Background

A taxpayer must establish that the position of the United States in the litigation was not substantially justified to be entitled to an award for litigation costs.  Sec. 7430(c)(4)(A)(i); Rule 232(e); Bragg v. Commissioner, 102 T.C. 715, 717 (1994).  The position of the United States is the position taken by the Commissioner:  (a) In the court proceeding, and (b) in the administrative proceeding as of the earlier of (i) the date the taxpayer receives the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency.  Sec. 7430(c)(7).

The Equal Access to Justice Act's substantially justified standard requires that the Government's position be justified to a degree that would satisfy a reasonable person.  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  That standard applies to motions for litigation costs under section 7430.  Nicholson v. Commissioner, 60 F.3d 1020, 1026 (3d Cir. 1995), revg. T.C. Memo. 1994-280; Comer Family Equity Pure Trust v. Commissioner, 958 F.2d 136, 139-140 (6th Cir. 1992), affg. T.C. Memo. 1990-316; Powers v. Commissioner, 100 T.C. 457, 470 (1993), affd. on this issue and revd. in part and remanded on other issues 43 F.3d 172 (5th Cir. 1995).  To be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact.  Pierce v. Underwood, supra; Hanover Bldg. Matls., Inc.

v. Guiffrida, 748 F.2d 1011, 1015 (5th Cir. 1984); Powers v. Commissioner, supra at 473. For a position to be substantially justified, there must be "substantial evidence" to support it. Pierce v. Underwood, supra at 564-565; Powers v. Commissioner, supra at 473.

The fact that the Commissioner eventually loses or concedes the case does not in itself establish that a position is unreasonable. Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993); Hanson v. Commissioner, 975 F.2d 1150, 1153 (5th Cir. 1992). However, it is a factor to be considered. Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-189; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Powers v. Commissioner, supra at 471. The taxpayer need not show that the Commissioner demonstrated bad faith to establish that the Commissioner's position was not substantially justified for purposes of a motion for litigation costs under section 7430. Estate of Perry v. Commissioner, supra; Powers v. Commissioner, supra.

2.  Whether Respondent's Position That the Covenant Not To Compete Had No or Minimal Value Had a Reasonable Basis in Fact and Law

Respondent's position in Beaver Bolt, Inc. v. Commissioner, T.C. Memo. 1995-549, was that Grecco's stock was worth $189,300 and that the covenant not to compete was worth $52,669. Petitioner contends that the position of the United States was

not substantially justified once respondent received the August 22, 1994, valuation report of its expert, which estimated that Grecco's stock in petitioner was worth $188,600 as of June 30, 1988. Petitioner argues that it is entitled to recover costs from that time.[3]

Respondent argues that petitioner intended that the purchase price ($513,400) provided in petitioner's stock purchase agreement was payment solely for Grecco's stock. Respondent points out that petitioner was obligated to pay Grecco that amount even if Grecco had not agreed not to compete and even if the fair market value of the stock was less than that amount. Respondent maintains that the fact that petitioner and respondent agreed to the fair market value for the stock did not alter the fact that the allocation of any value to the covenant not to compete lacked economic reality. Respondent argues that the amount allocated to the covenant not to compete did not result from arm's-length negotiations. Respondent points out that Grecco and petitioner did not have adverse tax interests with respect to the allocation of $383,400 to the covenant.

---

[3] Generally, the position of the United States in the judicial proceeding is the position taken in the Commissioner's answer to the petition. Sec. 7430(c)(7)(A); Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part on other grounds and remanding T.C. Memo. 1991-144. Respondent filed the answer on Dec. 6, 1993. Petitioner does not contend that it is entitled to an award for litigation costs incurred before Aug. 22, 1994.

Respondent argues that Grecco was not concerned with the allocation of the purchase price between her stock in petitioner and the covenant not to compete, and that she was only concerned with the total amount she would receive when she left petitioner.

None of these points establish that respondent had a basis in fact for continuing to contend, after August 22, 1994, that the covenant not to compete was worth $52,669. Respondent had petitioner's expert's report on June 24, 1994 (3 months before trial), and had respondent's expert's report on August 22, 1994 (one month before trial). Respondent did not concede that the covenant was worth $324,100 (or any amount more than $52,669) despite the fact that (a) petitioner's expert said that Grecco's stock in petitioner was worth $190,000, respondent's expert said it was worth $188,600, and the parties agreed that the stock was worth $189,300, and (b) respondent presented no fact or theory to support the conclusion that petitioner paid the remaining $324,100 ($513,400 - 189,300 = $324,100) to Grecco for anything other than the covenant not to compete. Respondent did not offer a reasonable theory for why the covenant not to compete was worth less than $324,100. Respondent's failure to reevaluate that position after August 22, 1994, was unreasonable. Frisch v. Commissioner, 87 T.C. 838, 841 (1986) (the Commissioner's valuation position was unreasonable where the Commissioner had the taxpayer's appraisal for 7 months before trial and did not investigate further or reevaluate the Commissioner's own position

as new facts came to light); Williford v. Commissioner, T.C. Memo. 1994-135 (the Commissioner's valuation position was unreasonable where the Commissioner was slow to seek an appraisal, did not contact the taxpayer's valuation expert, and did not modify her position after receiving the Commissioner's expert's report 42 days before trial). Respondent's position in the instant case is weaker than the Commissioner's position in Frisch v. Commissioner, supra, because here respondent's expert substantially agreed with petitioner's expert regarding the value of Grecco's stock. We conclude that respondent's position did not have a reasonable basis in fact or law.

3. Amount of Reasonable Attorney's Fees and Litigation Costs

Petitioner seeks an award of litigation costs of $44,737.25, comprising $42,254.75 for attorney's fees and $2,482.50 for out-of-pocket expenses.

a. Hourly Rate

Respondent argues that the maximum hourly rate for attorney's fees is $75, adjusted for increases in the cost of living, sec. 7430(c)(1)(B)(iii), and that a higher limit should not apply absent a showing that a special factor justifies a higher rate, sec. 7430(c)(1)(B)(iii); Stieha v. Commissioner, 89 T.C. 784, 792 (1987).

Petitioner does not argue that special factors are present that warrant payment of attorney's fees at a rate higher than

$75.  Accordingly, we apply the $75 hourly rate, adjusted for increases in the cost of living.  Sec. 7430(c)(1)(B)(iii).

  b.    Adjustment of $75 Limit for Increases in the Cost of Living From 1986

We use the Consumer Price Index (CPI) for all urban consumers to adjust the $75 hourly limit for increases in the cost of living.  Powers v. Commissioner, 100 T.C. at 491; Cassuto v. Commissioner, 93 T.C. 256, 273 (1989), affd. in part and revd. in part 936 F.2d 736 (2d Cir. 1991).

We have held that 1981 is the appropriate base year for calculating cost of living increases under section 7430(c)(1)(B)(iii).  Bayer v. Commissioner, 98 T.C. 19, 23 (1992); Cassuto v. Commissioner, supra at 269.  However, the U.S. Court of Appeals for the Ninth Circuit, to which this case is appealable, has held that the appropriate base year for calculating cost of living increases is 1986.  Huffman v. Commissioner, 978 F.2d 1139, 1151 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144.  We follow that holding here.  Golsen v. Commissioner, 54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

In addition to attorney's fees, petitioner incurred litigation costs of $2,482.50.  Respondent does not argue that the amount of litigation costs claimed by petitioner is unreasonable except for the hourly rate issue just decided.  We treat this as respondent's concession that the number of hours

billed by petitioner's attorneys and other litigation costs were reasonable. The hours billed by petitioner's attorneys for which petitioner is entitled to be reimbursed are for work performed from August 1994 to March 1995. We award petitioner attorney's fees at an hourly rate not to exceed $103.95 for 1994 and $107.10 for 1995, and litigation costs in the amount of $2,482.50.

An appropriate order and decision will be entered.