T.C. Memo. 1998-276

UNITED STATES TAX COURT

JOSEPH F. AND CAMILLE T. UDDO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16687-97.                      Filed July 29, 1998.

<u>William A. Neilson</u> and <u>Joseph John Ecuyer III</u>, for

petitioners.

<u>Linda K. West</u> and <u>Mary Beth Calkins</u>, for respondent.


MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  This case is before the Court

on petitioners' motion for award of reasonable litigation and

administrative costs pursuant to section 7430 and Rules 230, 231,

and 232,[1] filed March 24, 1998.  Neither party requested a

_____

[1]    Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

hearing, and the Court concludes that a hearing is not necessary for the proper disposition of this motion.

On their jointly filed 1994 Federal income tax return, petitioners reported $57,285 as a taxable distribution from an individual retirement account (IRA). For petitioners' 1994 tax year respondent received a Form 1099-R from American Express Trust Co. (American Express) reporting that petitioners had received a gross distribution of $156,931.

On January 6, 1997, respondent mailed a 30-day letter (Tax Notice CP-2000) to petitioners. A copy of the letter was sent to William A. Neilson (Mr. Neilson) as attorney for petitioners. The letter stated that respondent proposed to increase petitioners' taxable income by $165,211. The proposed increase produced an additional tax liability of $57,671. In addition, the letter proposed an accuracy-related penalty of $11,534. The letter stated that if petitioners did not respond within 30 days respondent would issue a notice of deficiency. The letter further stated that if petitioners did not agree with respondent's proposed changes, petitioners should submit a signed statement of explanation and include any supporting documentation. Petitioners did not respond to the 30-day letter.

On May 9, 1997, respondent mailed the notice of deficiency determining a deficiency in petitioners' 1994 Federal income tax in the amount of $57,671 and an accuracy-related penalty under section 6662(a) and (d) in the amount of $11,534. Petitioners

filed their petition with this Court on August 8, 1997. At the time their petition was filed, petitioners resided in New Orleans, Louisiana.

Respondent filed an answer on September 11, 1997. Shortly thereafter, the case file was forwarded to respondent's Appeals Office in New Orleans, Louisiana, where the case was assigned to Appeals Officer Gregory M. Berry (Mr. Berry). The administrative file received by Mr. Berry bore no indication that petitioners had provided respondent with any information or response to the 30-day letter.

On September 15, 1997, Mr. Neilson wrote to Mary Beth Calkins at respondent's District Counsel office in New Orleans. Mr. Neilson asserted that the disputed amount of $156,931 was a "direct rollover" by petitioners from American Express to an IRA with Southwest Securities, Inc. (Southwest). Attached to the letter were copies of documents purporting to support petitioners' position, including an application by Mr. Uddo for an IRA with Southwest, a letter requesting a transfer of Mr. Uddo's accounts with IDS (American Express), and "portfolio summary" statements from Southwest.

In a letter dated September 18, 1997, Mr. Berry wrote to acknowledge respondent's receipt of Mr. Neilson's September 15, 1997, letter and the supporting documentation. Mr. Berry stated that from his review of the supporting documentation he was unable to tie the information to the disputed amount and

requested additional clarification.  Receiving no response to this letter, Mr. Berry contacted Mr. Neilson by telephone on November 4, 1997.  During this conversation, Mr. Neilson stated that he had just received information from petitioners' accountant tracing the liquidated funds to the Southwest account into which they were purportedly rolled over; Mr. Neilson further indicated that he would shortly forward this information to Mr. Berry.

Mr. Berry did not receive the promised information from Mr. Neilson, so he followed up with another phone call on November 26, 1997.  The two agreed to meet on December 2, 1997.  At the December 2d meeting, the documentation offered by Mr. Neilson was largely duplicative of that previously provided.  Mr. Neilson still was unable to trace the amount at issue to any combination of deposits in the Southwest account.  Mr. Neilson had not contacted either the payor, American Express, or Southwest. Further, Mr. Neilson presented no evidence or clarification to establish that the $156,931 at issue had been rolled over tax-free.

In an effort to resolve the matter, on December 3, 1997, Mr. Berry wrote to American Express requesting that it provide details to support the amount it had reported on the Form 1099-R, specifically the date and amounts of the distributions, and whether they were paid directly to Mr. Uddo or to a third party. On January 9, 1998, Mr. Berry received a response from American

Express providing a breakdown of the distributions from Mr. Uddo's accounts by date, amount, and payee. Due to an obvious date error in two of the entries, Mr. Berry called American Express to request a correction. The corrected response was received by Mr. Berry on January 16, 1998.

Upon review of the documentation from American Express, Mr. Berry concluded that $144,931 of the $156,931 had been rolled over tax-free. On January 16, 1998, Mr. Berry mailed the American Express documentation to Mr. Neilson along with a letter requesting any additional information that would support a finding that the final $12,000 was also rolled over tax-free.

Mr. Berry spoke with Mr. Neilson by telephone on February 20, 1998, and Mr. Neilson stated that he needed to consult with petitioners and their accountant. Mr. Berry followed up with a phone call to Mr. Neilson on February 25, 1998, and was advised that Mr. Neilson had not received his clients' approval to concede the remaining $12,000. When Mr. Berry contacted Mr. Neilson again on February 27, 1998, Mr. Neilson stated that he had not received a response from petitioners' accountant. Mr. Berry then advised Mr. Neilson that decision documents would be prepared reflecting the $12,000 as taxable. The decision document was prepared and faxed to Mr. Neilson on March 3, 1998.

At the call of the trial calendar on March 9, 1998, the decision document executed by the parties was filed as a stipulation of settlement. The stipulation of settlement

provided: (1) Petitioners' 1994 income tax liability is $31,374; (2) the deficiency to be paid by petitioners is $27,824; and (3) petitioners are not liable for the accuracy-related penalty under section 6662(a). On March 24, 1998, petitioners filed their motion for award of reasonable litigation and administrative costs in the amount of $2,763.

## Discussion

A taxpayer who substantially prevails in an administrative or court proceeding may be awarded a judgment for reasonable costs incurred in such proceedings. Sec. 7430(a). A judgment may be awarded under section 7430 if a taxpayer (1) was the prevailing party; (2) exhausted the administrative remedies available to the taxpayer within the Internal Revenue Service;[2] and (3) did not unreasonably protract the proceedings. Sec. 7430(b). These requirements are in the conjunctive; each must be met in order for the Court to consider awarding litigation or administrative costs under section 7430. Minahan v. Commissioner, 88 T.C. 492, 497 (1987); Renner v. Commissioner, T.C. Memo. 1994-372.

To be a "prevailing party" a taxpayer must establish the following: (1) The taxpayer substantially prevailed with respect to either the amount in controversy or with respect to the most significant issue presented; and (2) the taxpayer met the net

_____

[2] This requirement applies only to an award of litigation costs. Sec. 7430(b)(1).

worth requirements of 28 U.S.C. section 2412(d)(2)(B) at the time the petition in the case was filed.  Sec. 7430(c)(4)(A). However, a party shall not be treated as the prevailing party if the United States establishes that the position of the United States in the proceeding was substantially justified.  Sec. 7430(c)(4)(B).

Respondent contends that the position of the United States was substantially justified and that petitioners have not proved that they exhausted their administrative remedies.  Respondent concedes that petitioners have satisfied the other requirements of section 7430.

To decide whether respondent's position was substantially justified, the Court must first identify the point in time at which the United States is considered to have taken a position and then decide whether the position taken from that date forward was substantially justified.  In general, we bifurcate our analysis and look separately at the dates that respondent took a position in the administrative proceeding and in the proceeding in this Court.  Sec. 7430(c)(7)(A) and (B); Huffman v. Commissioner, 978 F.2d 1139, 1144 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-144.  In the instant case, however, we may dispense with the bifurcated analysis because respondent's position on each of these dates was the same.  Swanson v. Commissioner, 106 T.C. 76, 87 (1996). Respondent took a position in the administrative proceeding when

the statutory notice of deficiency was issued to petitioners on May 9, 1997. Sec. 7430(c)(7)((B).[3] Specifically, in the notice of deficiency respondent determined that petitioners had unreported gross income of $156,931 from an IRA distribution received from American Express in 1994. Respondent took a position in the proceeding in this Court when respondent's answer was filed on September 11, 1997. See Huffman v. Commissioner, supra at 1148. In the answer, respondent denied petitioners' allegation that they did not receive an unreported IRA distribution in the amount of $156,931 in 1994.

We analyze the Government's position on the date of the notice of deficiency in the context of what caused the Government to take that position. Lennox v. Commissioner, 998 F.2d 244, 247-249 (5th Cir. 1993), revg. in part and remanding T.C. Memo. 1992-382.[4] This analysis may include events preceding the date

---

[3] An administrative proceeding is defined as any procedure or other action before the Internal Revenue Service. Sec. 7430(c)(5). Sec. 7430(c)(7)(B) provides that the United States takes a position in an administrative proceeding as of the earlier of the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or the date of the notice of deficiency. In the instant case, no notice of decision of the Internal Revenue Service Appeals Office was ever issued or received by petitioners prior to the date of the notice of deficiency. Accordingly, the United States took a position on the date the notice of deficiency was issued.

[4] Venue for appeal in this case lies to the Court of Appeals for the Fifth Circuit. Accordingly, precedent from that jurisdiction controls our analysis of the issues. Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th

(continued...)

the notice of deficiency was issued.  Id.; Williford v. Commissioner, T.C. Memo. 1994-135.

Respondent's position is substantially justified if it is justified to a degree that could satisfy a reasonable person and has a reasonable basis both in law and fact.[5]  Pierce v. Underwood, 487 U.S. 552, 565 (1988); Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182.  The assessment of reasonableness is based on all the facts and circumstances surrounding the proceeding.  Nalle v. Commissioner, supra at 191.  The burden of proof on this issue is upon respondent.  Sec. 7430(c)(4)(B).[6]

Respondent's concession of the case does not in itself compel the conclusion that respondent's position was not substantially justified.  Hanson v. Commissioner, 975 F.2d 1150, 1155-1156 (5th Cir. 1992), revg. an unpublished order of this Court; Swanson v. Commissioner, supra at 94.  Rather, it remains

---

[4](...continued)
Cir. 1971).

[5]     The substantially justified standard is the same as the reasonableness standard of prior law.  Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).

[6]     Sec. 7430 was amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 701(a) and (b), 110 Stat. 1463 (1996), to shift the burden of proof on this issue to respondent.  The amendment is effective with respect to proceedings commenced after July 30, 1996.  Id. at secs. 701(d), 702(b), 703(b), and 704(b), 110 Stat. 1464.

a factor to be considered in assessing respondent's justification.  Hanson v. Commissioner, supra at 1156.

Petitioners contend that in the notice of deficiency respondent "merely alleged" unreported income based on a Form 1099-R issued by a third party.  Essentially, petitioners argue that there was an inadequate factual basis for the determination and that, consequently, respondent's position was not substantially justified.  This argument is premised upon Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991) (Portillo I), affg. in part, revg. in part and remanding T.C. Memo. 1990-68, and its companion case Portillo v. Commissioner, 988 F.2d 27 (5th Cir. 1993) (Portillo II), revg. and remanding T.C. Memo. 1992-99. For the reasons that follow, petitioners' reliance on these cases is misplaced.

In Portillo I, there was a $24,505 discrepancy between the amount reported on the taxpayer's return ($10,800) and the amount reported by a third party payor (Navarro) on a Form 1099 ($35,305).  During the audit, the taxpayer conceded his failure to report $3,125 in income received from Navarro, but denied receiving more than $13,925 from him.  Respondent's agent then contacted Navarro, who was able to produce copies of checks paid to the taxpayer in the amount of $13,925, but did not have copies of checks for the remaining $21,380 reported on the Form 1099. Thereafter, respondent issued a notice of deficiency.  The Court of Appeals for the Fifth Circuit found that respondent had

"arbitrarily decided to attribute veracity" to the "naked assertion" of the third party payor. Without evidence to support the notice of deficiency, the determination was held to be arbitrary and erroneous, resulting in a decision in favor of the taxpayer. Portillo v. Commissioner, 932 F.2d at 1133-1134.

In Portillo II, the taxpayer appealed this Court's denial of administrative and litigation costs incurred from Portillo I. The Court of Appeals for the Fifth Circuit relied upon the conclusion in Portillo I that "the deficiency notice 'lacked any ligaments of fact' and was 'clearly erroneous' as a matter of law", and held this to be a clear indication that respondent's reliance upon such an unsupported notice of deficiency was not substantially justified. Portillo v. Commissioner, 988 F.2d at 29.

In Portillo I and Portillo II respondent was aware before sending the notice of deficiency that the payor could not fully substantiate the amounts reported on the Form 1099. We, however, do not read Portillo II as holding that the Government may never be substantially justified in relying upon a third party payment report (Form 1099) in issuing a notice of deficiency that determines unreported income. Portillo II does not address the question presented herein; viz, whether respondent may be substantially justified in relying upon a third party payment report when the taxpayer fails to respond to respondent's inquiries.

In <u>Sher v. Commissioner</u>, 861 F.2d 131, 134-135 (5th Cir. 1988), affg. 89 T.C. 79 (1987), the Court of Appeals for the Fifth Circuit held that respondent's position was substantially justified where respondent relied upon apparently credible third party payment information that had not been refuted by the taxpayers.[7]  Even in the wake of its decisions in <u>Portillo I</u> and <u>Portillo II</u>, the Court of Appeals for the Fifth Circuit continues to cite <u>Sher v. Commissioner</u>, <u>supra</u>, for this proposition.  See, e.g., <u>Nalle v. Commissioner</u>, <u>supra</u> at 192.[8]  Furthermore, other Court of Appeals for the Fifth Circuit cases suggest that respondent's duty to investigate information provided by a third party payor is not absolute.  See, e.g., <u>Parker v. Commissioner</u>, 117 F.3d 785, 787 (5th Cir. 1997) (in context of a motion to dismiss for failure to state a claim, the court noted that respondent has no duty to investigate a third-party payment report that is not disputed by the taxpayer).

---

[7]     We recognize that <u>Sher v. Commissioner</u>, 861 F.2d 131 (5th Cir. 1988), affg. 89 T.C. 79 (1987), arose in the context of a motion for litigation costs; hence the focal point of the analysis was respondent's position in the answer.  Moreover, we note that in dicta, the Court of Appeals for the Fifth Circuit stated that respondent's reliance upon the information from the third party payor "would not have been sufficient if the petition and the documents in the file demonstrated the need for further investigation."  <u>Id.</u> at 135.

[8]     The opinion in <u>Sher v. Commissioner</u>, <u>supra</u>, was superseded by statute on other grounds.  See <u>Hanson v. Commissioner</u>, 975 F.2d 1150, 1152 n.2 (5th Cir. 1992), revg. an unpublished order of this Court.

Petitioners concede that they received the 30-day letter. The 30-day letter served upon petitioners specifically stated the basis for respondent's adjustment and clearly requested a response from petitioners and supporting documentation. Petitioners did not respond to the 30-day letter. Indeed, petitioners' first contact with respondent concerning this matter came through their counsel after the petition in this case was filed.[9] Approximately 1 year after respondent first requested information from petitioners, respondent received information from American Express establishing that petitioners had not underreported their income in the amount originally indicated. Significantly, respondent received this information only after respondent directly contacted the third party payor. Over a 5-month period, respondent's Appeals Officer contacted petitioners' counsel in repeated attempts to resolve this matter. Respondent notified petitioners' counsel on January 16, 1998, that respondent was conceding all but $12,000 of the disputed amount, and stated that respondent was prepared to concede the remainder if petitioners proffered the necessary documentation. Despite repeated statements, petitioners' counsel failed to follow up with the Appeals Officer.

---

[9]    In their motion, petitioners argue that their accountant responded to the 30-day letter by sending documentation to the Internal Revenue Service Center in Chamblee, Georgia, to support their position that the amount reported on the Form 1099-R by American Express was a nontaxable rollover from an IRA. This assertion is unsupported by the record.

This conduct places petitioners squarely in the position of the taxpayer in McDaniel v. Commissioner, T.C. Memo. 1993-148. In McDaniel, respondent sent a letter to the taxpayer (Tax Notice CP-2501) requesting an explanation as to why information reported on the taxpayer's return did not match information provided by third party payors.  After the taxpayer failed to respond to the letter, respondent issued a notice of deficiency.  Six months after the petition was filed, the taxpayer provided information that enabled respondent to concede that there was no deficiency. In denying the taxpayer's motion for administrative and litigation costs this Court stated

> Although respondent ultimately conceded each of the issues raised in the notice of deficiency, she was not able to do so without the information from petitioner.  A request for such information was made before the statutory notice of deficiency was issued.  Any delay in this case was caused by petitioner and petitioner's counsel.  Had petitioner acted promptly, this matter could have been resolved shortly after petitioner received the Tax Notice CP-2501 * * *.  We find that respondent's position was not unreasonable * * * [McDaniel v. Commissioner, supra; emphasis added.]

In short, just as in McDaniel v. Commissioner, supra, any delay in resolution of this case was caused by petitioners and their counsel.  If petitioners had responded to the 30-day letter, this matter could have been resolved prior to the issuance of the notice of deficiency.

We conclude that respondent had a reasonable basis in fact and in law for the issuance of the notice of deficiency.

Accordingly, we hold that respondent's position was substantially justified.

For similar reasons to those already discussed, we also conclude that respondent's position respecting the accuracy-related penalty was substantially justified.  The original indicated omission of income was substantial, and petitioners offered no explanation for that omission.

The requirements of section 7430 are in the conjunctive, <u>Minahan v. Commissioner</u>, 88 T.C. at 497, and our holding that respondent's position was substantially justified disposes of petitioners' motion.  Accordingly, we need not address whether petitioners' had exhausted all the administrative remedies.[10]

To reflect the foregoing,

<u>An appropriate order will be issued.</u>

---

[10]    Petitioners bore the burden of proof to establish that they exhausted the administrative remedies available to them within the Internal Revenue Service.  See Rule 142(a).  Without ruling on this issue, we note that petitioners have not alleged that they requested and were denied an Appeals Office conference as required by sec. 301.7430-1(b)(1), Proced. & Admin. Regs.