T.C. Summary Opinion 2009-102

UNITED STATES TAX COURT

NICHOLAS AND KERRI A. FITZPATRICK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25821-07S.              Filed July 8, 2009.

Nicholas and Kerri A. Fitzpatrick, pro se.

<u>Daniel P. Ryan</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.[1]  Pursuant to
section 7463(b), the decision to be entered is not reviewable by

---

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code as amended, Rule references are to the Tax
Court Rules of Practice and Procedure, and amounts are rounded to
the nearest dollar.

any other court, and this opinion shall not be treated as precedent for any other case.

This case is before the Court on petitioners' motion under section 7430 and Rule 231 for recovery of litigation costs.

## Background

Petitioners timely filed their 2005 Form 1040, U.S. Individual Income Tax Return. They resided in Massachusetts when they filed the petition.

## 1. Administrative Proceedings

The Internal Revenue Service (IRS) issued a Notice CP2000 dated March 19, 2007, to petitioners. The notice proposed adjustments to petitioners' 2005 Federal income tax for three unreported items: $1,000 in gambling income reported on a Form W-2G, Certain Gambling Winnings, issued by the Massachusetts State Lottery Commission; and $22,581 reported on two Forms SSA-1099, Social Security Benefit Statement, issued in the amounts of $22,388 and $192, respectively, by the Social Security Administration (SSA).[2] The total proposed deficiency in the notice was $2,872, plus statutory interest.

Petitioners responded to the notice with a letter dated March 25, 2007. In this letter petitioners agreed that they

---

[2] With respect to the proposed adjustment resulting from payments reported by the Social Security Administration (SSA), the Notice CP2000 indicated that $18,163 was includable in income.

omitted the gambling income from their 2005 return but disputed the proposed adjustment for Social Security income. Petitioners stated that they did not qualify for or receive any benefits from the SSA in 2005.

In a reply dated May 14, 2007, the IRS acknowledged petitioners' March 25, 2007, letter and instructed them to obtain written verification from the SSA of the correct amount paid to them in 2005.

Petitioners sought correction from the SSA with letters and telephone calls. Petitioners discovered that the SSA mailed one or more Forms SSA-1099 for 2005 to an old address where petitioner Nicholas Fitzpatrick had not lived since 2001. Further investigation by petitioners' representative indicated that Mr. Fitzpatrick was entitled to a check from the SSA in the amount of $196 in 2005 to correct errors in amounts due him as survivor's benefits between 1995 and 2000. Petitioners did not receive any checks or other benefits from the SSA in 2005.

During the period of April through August 2007, the IRS was aware that petitioners had made attempts to obtain information from the SSA, had not received an informed response from the SSA, and continued to seek documentation from the SSA to resolve this issue. The IRS issued a notice of deficiency on August 13, 2007,

determining a deficiency of $2,872 (the same amount proposed in the March 19, 2007, Notice CP2000).[3]

2.  Petition and Pretrial Proceedings

Petitioners filed their petition on November 9, 2007.  In the petition they asserted:  (1) That they did not receive any benefits from the SSA in 2005; rather, the SSA erroneously reported income paid to Mr. Fitzpatrick, the SSA was investigating the issue, and the SSA would correct the error; and (2) that they inadvertently omitted gambling income of $1,000 and agreed with that adjustment.

Respondent filed his answer December 19, 2007, denying for lack of sufficient information or knowledge that the SSA erroneously reported income paid to Mr. Fitzpatrick and admitting that petitioners inadvertently omitted gambling income.

Respondent assigned petitioners' case to an Appeals officer (AO) and mailed a letter explaining the Appeals process to petitioners on January 3, 2008.  The AO's activity log indicates that she received the case on January 15, 2008, and worked on the case on 5 different days between January and July 2008. Petitioners' representative, an enrolled agent with power of attorney, wrote the AO on January 15, 2008, stating that he had

---

[3] The 3-year period of limitations for assessment as to petitioners' timely filed 2005 Federal income tax return would normally expire on Apr. 15, 2009.

information that might resolve the case and asking the AO to contact him.

The AO's activity log contains the following notes:

| Date | Notes |
|------|-------|
| 1/15/08 | Analyzed case file.  Timely filed.  No prior involvemt.  Petitioners state they disagree w/the Social Security in the amt of $22,388.  However, the unreported gambling income is in fact accurate.  The petitioners state taht the SSA income is the tps mother.  The SSA is looking into this matter and will be makg the appropriate corrections.  Reviewd CP2000 notice and acct transcript.  Reqtg docs fr SSA to substantiate claim. |
| 2/29/08 | Conference ltrs issued. |
| 5/29/08 | Pc to POA and left message.  Pc to petitioners to determine if M Casey was representg them.  Left message. |
| 6/18/08 | Pc to petitioners.  Phone rang.  Contacted POA Michael Casey and left message for ret call.  Pc fr POA stag that petitioners are in the process of correcting info with SSA.  Discussed the Appeals process and taxpayer rights.  No addtl info has been provided to correct the SS income.  POA will be faxg addtl info when recd.  If addtl info is recvd forward to counsel. |
| 6/18/08 | Sustain compliance |
| 6/18/08 | ACM. |
| 6/18/08 | Closg docs for trial. |
| 6/18/08 | Email recd fr paralegal in the Boston Counsel office.  This case is scheduled on the September and she reqtd an update if possible on the case status. |
| 6/18/08 | Pc to paralegal statg the petitioners can not get the needed docs such as the corrected 1099 fr the SSA.  It appears that no setlemt will be reached.  POA is currently tryg to resolve this with SSA mgr in local office but so far no success.  Informed her that the petitioners have conceded the gambling income and not the SSA benefits. |

| Date | Notes |
|------|-------|
| 6/19/08 | Closing docs. |
| 7/01/08 | Pc to POA to state that I recd faxd copies of docs provided to explain the issues and how they have been attempting to get correctd 1099 fr SSA.  The docs stated that they were still in the process and a corrected copy has not been issued as of yet.  Informd POA that the case will be closed sustaing Compliance.  Informd POA that if the correctd copy of the 1099 is recvd he can send/fax to me and I will send it forward to be assocd w/file. |
| 7/01/08 | Recd faxed docs fr POA Michael Casey.  However, there is no corrected 1099 fr SSA to substantiate claim.  POA reqts a conference w/supervisor because he disagrees w/determination. |

The AO informed petitioners that without proof from the SSA that the information reported to the IRS for 2005 was incorrect, she had to process the case for trial.  In his request to meet with the AO's supervisor, petitioners' representative identified and provided a telephone number for an individual at the SSA who could explain that the income reported by the SSA was at least partially inaccurate.  The record does not indicate that the AO's supervisor met with petitioners' representative, nor that Appeals called the SSA contact petitioners provided.

Petitioners and their representative corresponded with the SSA between March 2007 and July 2008, and, as of July 1, 2008, they had not received documentation from the SSA describing or correcting any SSA reporting error.

On July 2, 2008, an IRS paralegal hand-delivered a letter to the Boston SSA office, together with a request for certification of records regarding the Forms SSA-1099 issued to Mr. Fitzpatrick for 2005.

While the IRS paralegal did not directly receive a response, on July 8, 2008, the SSA issued a letter to petitioners which stated that the Form SSA-1099 issued to Mr. Fitzpatrick for 2005 was incorrect, that the correct amount appeared to be zero, and that the corrected Form SSA-1099 was pending as of that date. It is not clear from the record precisely which query to the SSA triggered the July 8, 2008, letter.

At a July 14, 2008, meeting with IRS counsel in Boston, petitioners presented the July 8, 2008, letter from the SSA, and IRS counsel immediately conceded the entire Social Security income issue, which was the only remaining issue.

3. <u>Motion for Litigation Costs and Objection</u>

The parties filed a stipulation of settled issues on September 16, 2008, and petitioners filed a motion for litigation costs on the same date.

Respondent objects to petitioners' motion for litigation costs. In a response filed October 8, 2008, respondent concedes that petitioners substantially prevailed with respect to the amount in controversy, did not unreasonably protract the proceedings, requested reasonable costs, and met the net worth

limitation. Respondent initially objected to petitioners' request for litigation costs on two grounds: (1) That petitioners failed to exhaust all available administrative remedies; and (2) that respondent's position was substantially justified.

Petitioners replied to respondent's response on November 28, 2008, and supplemented their reply on December 8, 2008. Petitioners assert that they exhausted all available administrative remedies and challenge respondent's assertion of substantial justification, arguing that respondent merely relied on erroneous SSA reporting without any meaningful investigation while ignoring petitioners' challenge to the accuracy of the information reported.

Respondent concedes in his second response that petitioners are deemed to have exhausted the available administrative remedies, pursuant to section 301.7430-1(f)(2), Proced. & Admin. Regs. Respondent argues that he was substantially justified in his administrative and litigation position because petitioners did not assert a reasonable dispute regarding the income reported by the SSA until they produced the July 8, 2008, SSA letter well after both the August 13, 2007, notice of deficiency and the December 19, 2007, answer.

Finally, respondent asserts that petitioners' claim for additional costs is not reasonable with respect to petitioners' filings after the motion for litigation costs.

With their motion for litigation costs petitioners requested costs and fees of $2,610. They requested additional amounts with later filings.[4] Petitioners claimed the following itemized costs and fees:

| Date | Description | Amount |
|------|-------------|--------|
| 11/9/07 | Petition filing fee | $60 |
| 9/16/08 | Initial claim (petition through sec. 7430 motion) | 2,550 |
| 10/27/08 | Motion to strike | 400 |
| 11/28/08 | Reply to respondent's response | 700 |
| 11/28/08 | Postage on envelope containing reply | 2 |
| 12/8/08 | Estimated mailing costs | 20 |
| 1/28/09 | Motion to show cause | 100 |
| 4/27/09 | Motion for summary judgment | 150 |
| | Total | 3,982 |

## Discussion

Reasonable litigation costs may be awarded to a taxpayer if he satisfies the provisions of section 7430, which require that he: (1) Qualify as a prevailing party; (2) exhaust all available administrative remedies; (3) not unreasonably protract the court proceeding; and (4) demonstrate that the costs claimed are reasonable litigation costs incurred in connection with the court

---

[4] We denied the three motions petitioners filed after filing the motion for litigation costs on Sept. 16, 2008.

proceeding. Sec. 7430(a), (c)(4), (b)(1), (3). A taxpayer has the burden of establishing that he has satisfied each of the foregoing criteria. See Rule 232(e); Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430 (1997).

To qualify as a "prevailing party", a taxpayer must establish: (1) He substantially prevailed with respect to either the amount in controversy or the most significant issue or set of issues presented; and (2) he met the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) at the time he filed the petition. Sec. 7430(c)(4)(A). A taxpayer shall not be treated as a prevailing party if the IRS establishes that the Government's position in the proceeding was substantially justified. Sec. 7430(c)(4)(B).

Respondent concedes all requirements for petitioners to qualify for an award of litigation costs except that petitioners are a prevailing party, on the ground that respondent's position was substantially justified.[5] Respondent further asserts that

---

[5] Respondent initially asserted that petitioners received a notice of proposed deficiency (30-day letter). In their motion and reply, petitioners admitted receipt of a Notice CP2000 but denied receiving a 30-day letter. In his second response (after further review and after petitioners' reply), respondent conceded that petitioners received only a Notice CP2000 and not a 30-day letter. This concession implies a distinction between these two notices. Importantly, a 30-day letter includes instructions for requesting Appeals Office consideration of the proposed deficiency. In contrast, the Notice CP2000 in the record did not provide any such opportunity to request Appeals Office consideration of the proposed changes.

even if petitioners are entitled to an award, the costs claimed after they filed the motion for litigation costs are not reasonable.

A.    Substantially Justified

In the Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 701(a), 110 Stat. 1452, 1463 (1996), Congress amended section 7430(c)(4), shifting the burden from the taxpayer to the Government to prove the Government's position was substantially justified.  Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 79 (2004), affd. 404 F.3d 1291 (11th Cir. 2005).

In evaluating the Commissioner's justification we must first identify when the Commissioner took a position and then decide whether the position taken from that point forward was substantially justified.  Andary-Stern v. Commissioner, T.C. Memo. 2002-212.  We generally bifurcate our analysis, considering the Commissioner's position in the administrative proceeding separately from his position in the court proceeding.  Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part on other grounds and remanding T.C. Memo. 1991-144. The Appeals Office notice of decision or the notice of deficiency establishes the administrative position (whichever happens first).[6]  Sec. 7430(c)(7)(B).  The Commissioner's answer

_____

[6] Petitioners seek litigation costs only.  Thus, whether respondent was substantially justified in his administrative
(continued...)

establishes his litigation position. <u>Huffman v. Commissioner</u>, <u>supra</u> at 1148.

If the Commissioner acted reasonably on all the facts and circumstances and the legal precedents relating to the case, his position is substantially justified. <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988); <u>Sher v. Commissioner</u>, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). The Commissioner's position may be substantially justified even if incorrect "'if a reasonable person could think it correct'". <u>Maggie Mgmt. Co. v. Commissioner</u>, <u>supra</u> at 443 (quoting <u>Pierce v. Underwood</u>, <u>supra</u> at 566 n.2). The Commissioner's eventually conceding or losing a case does not establish that his position was not reasonable. <u>Sokol v. Commissioner</u>, 92 T.C. 760, 767 (1989).

It is well settled that the Commissioner is not obliged to concede a case until he receives the necessary documentation that proves the taxpayer's contentions with respect to any factual determination. <u>Gealer v. Commissioner</u>, T.C. Memo. 2001-180. Moreover, after he receives the documentation, the Commissioner

---

[6](...continued)
position is not directly relevant. We note, however, respondent's assertion that his answer adopted the position stated in the notice of deficiency, which would establish his administrative position in this case. Finally, to the extent that the administrative actions form a backdrop for respondent's litigation position, that history may prove relevant to our deciding whether the litigation position was substantially justified. See <u>Hanson v. Commissioner</u>, 975 F.2d 1150, 1153 (5th Cir. 1992).

has a reasonable period in which to analyze it and modify his position accordingly. Id. (citing Sokol v. Commissioner, supra at 765-766).

In TBOR 2 sec. 602, 110 Stat. 1463, Congress required that the Government conduct a reasonable investigation of a disputed information return because of difficulties imposed on a taxpayer by third parties' filing fraudulent information returns or issuing erroneous returns and refusing to correct the information. H. Rept. 104-506, at 36 (1996), 1996-3 C.B. 49, 84. In any Court proceeding where a taxpayer asserts a reasonable dispute with respect to income reported on a third-party information return and fully cooperates with the IRS, "the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return."[7] Sec. 6201(d). Full cooperation

---

[7] Because sec. 6201(d) applies only to court proceedings, it does not bear directly on the Commissioner's administrative position, but it does bear directly on his litigation position. As indicated, petitioners are not seeking administrative costs. Thus, we need not decide whether the Commissioner's position qua administrative position was reasonable. Nevertheless, it is conceivable that a position could be reasonable at the administrative stage but less so at the litigation stage as a result of the sec. 6201 burden of production. Cf. Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992) (the Commissioner's administrative position, established by the notice of deficiency, was not substantially justified, but his subsequent litigation position was substantially justified because in his answer he conceded the unreasonable position), affg. in part, revg. in part on other grounds and remanding T.C. Memo. 1991-144.

requires informing the IRS of the dispute within a reasonable time.  H. Rept. 104-506, supra at 36, 1996-3 C.B. at 84.  In addition, a taxpayer must provide timely "access to and inspection of all witnesses, information, and documents within the control of the taxpayer".  Sec. 6201(d).

Respondent argues that he was substantially justified in his litigation position, on the basis of information reported to the IRS by the SSA, until July 14, 2008, when petitioners produced the July 8, 2008, letter from the SSA indicating that the correct amount of their Social Security income for 2005 was zero.  The parties agree that the IRS promptly conceded this issue upon receipt of the SSA letter, but they disagree as to whether petitioners raised a reasonable dispute before producing the July 8, 2008, letter.

Petitioners argue that once they informed the IRS that the SSA reporting was erroneous, the IRS was not substantially justified in accepting the veracity of and relying exclusively on the information return filed by the SSA.  The question we must decide is whether respondent was substantially justified in the position he adopted in his answer and maintained in this litigation; namely, denying for lack of sufficient knowledge or information petitioners' allegation that the Form SSA-1099 was incorrect.

We have held that when a taxpayer did not raise an issue with a Form 1099, the IRS was substantially justified in relying on the third-party reporting. See McDaniel v. Commissioner, T.C. Memo. 1993-148. In addition, we have held that where a taxpayer did not timely furnish information required for the IRS to concede an issue supported by third-party reporting, the IRS was substantially justified until the taxpayer provided that information. See Uddo v. Commissioner, T.C. Memo. 1998-276. In each situation, we have denied litigation fees to the taxpayer whose delay prevented more expeditious resolution of his case. This case fits neither situation and also differs from Spurlock v. Commissioner, T.C. Memo. 2003-124, where we denied litigation fees sought by a taxpayer who did not fully cooperate and did not make her dispute known to the third parties who prepared the information returns she claimed were fraudulent.

Respondent apparently relies on a vague sentence at the end of the AO's activity log entry for January 15, 2008, to show that the AO requested information from the SSA. This sentence follows the AO's statement that she reviewed the Notice CP2000 and the transcript. It also falls at the end of a paragraph where she describes petitioners' position and their contentions about the SSA. The record does not contain copies of any written request from the AO to the SSA. Thus, it is far from clear that the AO was describing her current or intended actions rather than

petitioners' actions.  Furthermore, that entry at most indicates that someone was in the process of making a request to the SSA. In contrast, the AO used the past tense to describe her review of the file, clearly indicating that she had completed that task. Her activity log does not state that she actually made any request to the SSA, and it does not contain any followup by the AO or any evidence that she either noticed or was concerned that the SSA did not respond to any query during the more than 5 months she had the case.

On April 11, 2008, the Court issued a notice of trial informing the parties that this case was set for trial at the trial session beginning on September 15, 2008, in Boston.

It appears that the first time respondent attempted to obtain information from the SSA was July 2, 2008, when respondent's paralegal hand-delivered an inquiry to the SSA. Thus, on this record, it is clear that between the filing of the petition on November 9, 2007, and the paralegal's inquiry on July 2, 2008, respondent did not conduct any independent investigation despite petitioners' continuing challenge to the accuracy of the Form SSA-1099.  Rather, respondent relied solely on the information returns filed by the SSA.

Respondent argues that he had no responsibility to obtain information in addition to the information return from the SSA. The necessary inference from this assertion is that the petition

disputing the Form SSA-1099 did not trigger respondent's burden of production under section 6201(d).  Respondent does not allege and the record does not indicate that petitioners failed to cooperate fully.  Thus, respondent suggests that petitioners' dispute was not reasonable and hence respondent's burden of production under section 6201(d) did not arise until petitioners produced the July 8, 2008, SSA letter.[8]

Petitioners timely raised the issue of erroneous third-party reporting, both in their Notice CP2000 response and in their petition, and they, through their representative, diligently pursued the SSA to clarify the issue.  Petitioners provided respondent with copies of their letters to the SSA, together with SSA contact information, and they did not withhold any requested documents, information, or witnesses.  Petitioners raised a specific and credible dispute, and they fully cooperated with respondent.  Thus, we are satisfied that petitioners asserted a reasonable dispute and that respondent had an obligation to comply with section 6201(d).

---

[8] In his second response, respondent argues:

In this case, the burden did not shift to respondent to verify the income reported by the SSA because petitioners failed to provide documentation from the SSA or any other independent source rising to the level of a reasonable dispute before the issuance of the notice of deficiency or respondent's answer.

We must decide at what point in this Court proceeding respondent failed to take steps to procure reasonable and probative information concerning the deficiency in addition to the information return issued by the SSA. Another way to describe the question before us is: Given the existing administrative record in this case and given that a petition had been filed with the Court disputing an information return, at what point would respondent be required to satisfy his obligation under section 6201(d)?

When he filed his answer, respondent relied on the presumption of correctness normally afforded his deficiency notices in adopting his administrative position as his litigation position, and he placed on petitioners the entire burden of investigating whether the SSA made a mistake. However, the statute does not require a taxpayer to provide independent documentation proving that a disputed information return is erroneous as a prerequisite to raising a reasonable dispute under section 6201(d); rather, in response to a reasonable dispute by a taxpayer in a court proceeding, the statute requires the Commissioner to produce reasonable and probative information concerning the deficiency in addition to the disputed information return.

We conclude that respondent's obligation arose in this case soon after the petition was filed with this Court. Petitioners

filed the petition November 9, 2007, respondent filed his answer December 19, 2007, and Appeals first wrote to petitioners January 3, 2008. However, respondent's first attempt to procure reasonable and probative evidence to support the information return occurred July 2, 2008, approximately 8 months after the petition was filed.

Section 6201(d) as amended in 1996 requires the Commissioner to produce independent evidence supporting an information return reasonably challenged by a cooperating taxpayer, and section 7430(c)(4)(B)(ii) requires him to prove that his position was substantially justified. We note that the cases discussing the weight to be given to IRS information documents, in a situation of omitted income, and the effect on the burden of persuasion are cases decided before the amendment to section 6201.[9]

---

[9] In contrast to Portillo v. Commissioner, 932 F.2d 1128, 1133-1134 (5th Cir. 1991) (requiring the IRS to attempt to substantiate a disputed charge of unreported income by some means other than the naked assertion of the third-party reporter), affg. in part, revg. in part and remanding T.C. Memo. 1990-68, the Court of Appeals for the First Circuit has held that the burden of going forward and of ultimate persuasion always rests on the taxpayer and never shifts to the Commissioner. United States v. Rexach, 482 F.2d 10, 17 (1st Cir. 1973); see also Delaney v. Commissioner 99 F.3d 20, 23 (1st Cir. 1996), affg. T.C. Memo. 1995-378. But for the provisions of sec. 7463(b), the decision in this case would be appealable to the Court of Appeals for the First Circuit. See sec. 7482(b)(1)(A). This Court generally applies the law in a manner consistent with the holdings of the Court of Appeals to which an appeal of its decision would lie, see Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), even in cases subject to sec. 7463(b).

Respondent argues that awarding costs in this case would require the IRS to investigate all third-party information returns, even Forms 1099 issued by other Federal agencies, before issuing a notice of deficiency or to risk liability for litigation costs; that such an award would unfairly hold the IRS responsible for the SSA's error and untimely response; and that the administrative burden flowing from such a holding would be both unreasonable and overwhelming.

As indicated, this case does not address the reasonableness of the administrative position established in the notice of deficiency because petitioners have not requested administrative costs or fees. Furthermore, section 6201(d) does not apply to prelitigation actions. Thus, respondent's argument is misdirected. The issue here is whether respondent was reasonable in adopting and maintaining the administrative position as his litigation position, in view of the affirmative duty imposed by section 6201(d) to produce probative information in this Court proceeding to verify the disputed information return.

Respondent also complains that awarding litigation costs in this case holds the IRS liable as a result of third-party errors and unfairly makes the IRS responsible for another agency's untimely response. Neither assertion is accurate; rather, any award of litigation costs results from respondent's failure to act reasonably in adopting a litigation position without

attempting to obtain reasonable and probative information concerning the deficiency, as required by section 6201(d).

As indicated, the petition was filed in this matter on November 9, 2007.  Petitioners explained in the petition:

> The Taxpayer, Nicholas Fitzpatrick, did not at any time in the year 2005, receive Social Security benefits from the Social Security Administration.  This was an error in computation of a Workman's Compensation offset determined to be attributable to the Taxpayer's mother, Lynda Fitzpatrick. The Social Security Administration is now looking into this matter and will be making the appropriate corrections.  We request that the income relating to Social Security be reduced to zero, and the tax deficiency relating to such income be eliminated.

Respondent had 60 days to file his answer.  See Rules 173(b), 36(a).  The answer was filed December 19, 2007.  In response to petitioners' challenge to the SSA income, respondent asserted: "Denies for lack of sufficient knowledge or information."

Rule 33(b) requires inquiry into both the facts and the law relevant to any pleading at the time the pleading is filed. Versteeg v. Commissioner, 91 T.C. 339, 342 (1988).  In this case that would entail review of information in the administrative file.  A review of that file would presumably have revealed that the basis for the determination of omitted income was the contested Form SSA-1099.  The file would also have revealed petitioners' consistent position that the information return was incorrect as well as petitioners' attempts to get the SSA to respond to their inquiries.  At some point respondent's counsel

responsible for this case should have become aware of his verification obligation under section 6201(d).

Considering the particular circumstances of this case, we conclude that respondent's denial for lack of knowledge or information with respect to petitioners' Social Security income was not reasonable given his duty under section 6201(d). Assuming respondent's counsel had the administrative file, he should have reviewed the file before filing the answer.  Even if respondent did not have the file and thus was required either to answer for lack of knowledge or information or to seek additional time to file the answer, there is nothing in this record to establish that respondent took any steps before July 2, 2008, to investigate the disputed Form SSA-1099.  Under these particular facts and circumstances we conclude that respondent was not substantially justified in continuing this litigation without any such investigation.[10]

Accordingly, petitioners are a prevailing party, and we hold that they are entitled to an award of attorney's fees and litigation costs.

---

[10] The SSA issued its July 8, 2008, letter within days of respondent's July 2, 2008, hand-delivered query.  It is possible that a timely inquiry to the SSA by respondent's counsel upon receipt of the petition could have resolved this case much sooner, saving petitioners and the Government costs and expenses.

B.    Reasonable Litigation Costs

Section 7430(c)(3)(A) provides that

> fees for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court or the Internal Revenue Service shall be treated as fees for the services of an attorney.

Furthermore, attorney's fees may not exceed $125 per hour absent our finding that an increase in the cost of living or a special factor justifies a higher rate.  Sec. 7430(c)(1)(B)(iii).

Petitioners claim attorney's fees for the services of an enrolled agent, and the invoices submitted indicate that their representative charged $100 per hour.  The hourly charges for their representative may be treated as litigation fees without adjustment, provided the hours claimed are reasonable.  See Cozean v. Commissioner, 109 T.C. 227, 234 (1997).

In his response respondent conceded that petitioners requested reasonable litigation costs and fees in their motion.

Respondent contends that costs and fees claimed after the motion are not reasonable.  As to petitioners' reply to respondent's response to petitioners' motion, petitioners argued convincingly that they did not receive a 30-day letter and were not afforded an opportunity for pre-petition Appeals Office consideration of their case.  Respondent conceded this issue upon further consideration and several months after petitioners submitted their reply.  We find that the $700 claimed for preparing petitioners' reply was reasonable, as was the $2

postage affixed to the envelope used to mail the reply to the Court.

Petitioners filed a motion to strike certain assertions in respondent's response. This motion served no useful purpose, did not advance this litigation, and was denied. Petitioners also claimed $20 in estimated mailing costs but provided no support for those estimated costs. Thus, the $400 claimed for the motion to strike and the $20 claimed for estimated mailing costs are not reasonable.

Petitioners' motion to show cause concerned petitioners' proposed stipulation of fact that they did not receive a 30-day letter. The arguments in petitioners' previously filed reply and respondent's subsequent concession rendered petitioners' motion to show cause moot. Finally, petitioners' motion for summary judgment was denied. Claimed costs of $100 for the show cause motion and $150 for the summary judgment motion are not reasonable.

Conclusion

For the reasons discussed above, petitioners are entitled to an award of litigation costs and fees totaling $3,312.

An appropriate order and
decision will be entered.